**Tyree FORD, a minor, by his parent and natural guardian, Louise R. PRINGLE, Appellant,**

v.

**PHILADELPHIA HOUSING AUTHORITY.**

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 2001.

Decided Dec. 5, 2001.

David J. Alexander, Philadelphia, for appellant.

Susan J. French, Philadelphia, for appellee.

Before PELLEGRINI, Judge, KELLEY, Judge and RODGERS, Senior Judge.

PELLEGRINI, Judge.

Tyree Ford (Plaintiff), a minor, by his parent and natural guardian, Louise R. Pringle, appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) denying his request to remove a compulsory non-suit and dismissing his complaint with prejudice.

On October 20, 1999, Plaintiff, a nine-year-old boy represented by his mother, filed a complaint against the Philadelphia Housing Authority (Housing Authority) alleging that his exposure to lead paint while living in Housing Authority properties since his birth caused him to suffer neurological and intellectual deficits. Prior to the start of the trial, counsel for the Housing Authority moved to preclude the testimony of Plaintiff's experts, Theodore I. Lidsky, Ph.D. (Dr. Lidsky) and Jay S. Schneider, Ph.D. (Dr. Schneider), alleging that because neither doctor was a licensed psychologist and their administration and interpretation of certain tests [1] constituted

---

1. On January 21, 1999, Dr. Schneider performed the following tests on Ford: (1) the Wechler Intelligence Scale for Children III to determine cognitive processes; (2) the Purdue Pegboard to assess fine motor dexterity and visuomotor abilities; (3) the Rey Osterrieth

the practice of psychology, they were in violation of the Professional Psychologists Practice Act, Act of March 23, 1976, P.L. 136, *as amended*, 63 P.S. § 1201—1218 (Psychologists Practice Act), making them incompetent to testify.

■ Finding that Dr. Lidsky's and Dr. Schneider's administration and subsequent interpretation of the tests constituted the practice of psychology in violation of the Psychologists Practice Act, the trial court held that they were incompetent to testify and, therefore, granted the Housing Authority's motion to preclude their testimony. Because Plaintiff would be unable to establish that the Housing Authority caused any injury to him without the testimony of either Dr. Lidsky or Dr. Schneider, the trial court granted a non-suit. Seeking to remove the non-suit, Plaintiff filed post-trial motions which were denied. This appeal followed.[2]

Plaintiff contends that the trial court erred in finding that Dr. Lidsky and Dr. Schneider violated the Psychologists Practice Act. Section 3 of that Act makes it unlawful for "any person to engage in the practice of psychology or to offer or attempt to do so or to hold himself out to the public by any title or description of services incorporating the words "psychological," "psychologist" or "psychology" unless he shall first have obtained a license pursuant to this act." 63 P.S. § 1203. Plaintiff argues that Dr. Lidsky's and Dr. Schneider's administration and interpreta-

tion of certain tests did not violate the Psychologists Practice Act because that did not constitute the practice of psychology as defined by that Act.

Section 2 of the Act defines the practice of psychology, in relevant part, as:

[O]ffering to render or rendering to individuals, corporations, institutions, governmental agencies, or the public for remuneration any service involving the following:

* * *

(ii)(a) "Measuring and testing," consisting of the psychological assessment and evaluation of abilities, attitudes, aptitudes, achievements, adjustments, motives, personality dynamics and/or other psychological attributes of individuals, or group of individuals by means of standardized measurements or other methods, techniques or procedures recognized by the science and profession of psychology, (b) "psychological methods," consisting of the application of principles of learning and motivation in an interpersonal situation with the objectives of modification of perception and adjustment, and requiring highly developed skills in the disciplines, techniques, and methods of altering through learning processes, attitudes, feelings, values, self-concept, personal goals and adaptive patterns, (c) "psychological consulting,"

Complex Figure Test to obtain a measure of visuospatial constructional abilities; (4) the Conner's Continuous Performance Test to analyze Ford's attentional functioning; (5) the Brief Test of Attention to determine Ford's ability to divide auditory attention; (6) the California Verbal Learning Test to test memory function; and (7) the Wisconsin Card Sorting Task to determine concept formation and mental flexibility. Based on the outcome of these tests, Drs. Schneider and Lidsky opined that Ford's functional impairments were due

to brain damage caused by lead exposure. (Functional Assessment Report, January 25, 1999.)

2. Our scope of review in an appeal from a trial court's denial of a motion to remove a non-suit is limited to determining whether the trial court abused its discretion or committed an error of law. *Leone v. Department of Transportation,* 780 A.2d 754 (Pa.Cmwlth. 2001).

consisting of interpreting or reporting upon scientific fact or theory in psychology, rendering expert psychological opinion, psychological evaluation or engaging in applied psychological research.

63 P.S. § 1202. Because Dr. Lidsky's and Dr. Schneider's administration and interpretation of the tests consisted of the psychological assessment and evaluation of abilities of Plaintiff by means of standardized measurements or other methods, techniques or procedures recognized by the science and profession of psychology, such actions constituted the practice of psychology pursuant to Section 2(ii)(a) of the Psychologists Practice Act, 63 P.S. § 1202(ii)(a).[3]

Even if Dr. Lidsky's and Dr. Schneider's administration and interpretation of the tests fell within the "practice of psychology" as defined by the Psychologists Practice Act, Plaintiff contends that as neuroscientists, their administration and interpretation of the tests falls within an exception to the necessity for a license in Section 3 of the Psychologists Practice Act, which provides, in part:

Nothing in this act shall be construed to prevent qualified members of other recognized professions, including, but not limited to, clergy, drug and alcohol abuse counselors, crisis intervention counselors, pastoral counselors, rehabilitation counselors and psychoanalysts, from doing work of a psychological nature consistent with the training and code of ethics of their respective professions or to prevent volunteers from providing services in crisis or emergency situations.

63 P.S. § 1203(3).

49 Pa.Code § 41.7 provides guidelines to determine whether a given group qualifies

---

**3.** Because of the way we resolve this issue, we need not address whether Dr. Lidsky's and Dr. Schneider's testimony should be precluded as incompetent because they are not licensed psychologists in Pennsylvania. In *Flanagan v. Labe*, 446 Pa.Super. 107, 666 A.2d 333 (1995), *affirmed*, 547 Pa. 254, 690 A.2d 183 (1997), a patient brought a medical malpractice suit against certain doctors and John F. Kennedy Memorial Hospital alleging that he received inadequate care while being treated for a collapsed lung. Before the trial court, the patient planned to offer the expert testimony of a nurse; however, prior to the start of the trial, the defendants filed a *motion in limine* seeking to preclude the nurse's testimony as to the patient's medical condition and the causes thereof which was granted. On appeal, concluding that such testimony would constitute a diagnoses which she was prohibited from giving under the Professional Nursing Law, Act of May 22, 1951, P.L. 317, *as amended*, 63 P.S. §§ 212—226, the Court held that she was incompetent to testify regarding the identity and cause of the patient's medical condition and affirmed the grant of defendants' motion. As can be seen, that case seems to suggest that lack of licensure makes the witness incompetent to testify.

The admissibility of expert testimony, however, in Pennsylvania is governed by Pa. R.E. 702, which provides:

If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Pennsylvania courts have not held that licensing is a requirement for qualification of an expert. *See Commonwealth v. Davenport*, 449 Pa. 263, 295 A.2d 596 (1972); *Commonwealth v. Morris*, 205 Pa.Super. 105, 207 A.2d 921 (1965); *McClain v. Welker*, 761 A.2d 155 (2000), *petition for allowance of appeal denied*, 565 Pa. 647, 771 A.2d 1286 (2001). Consequently, the argument that lack of licensure or lack of compliance with the Psychologists Practice Act only goes to the weight accorded the testimony and it is for the appropriate administrative agency charged with enforcing the statute to determine whether to seek sanctions for a violation, is a substantial one but one we need not address.

as a recognized profession for the purposes of Section 3(3) of the Psychologists Practice Act. Those guidelines include:

(1) The group's activity and focus must be based on an identifiable body of theoretical knowledge which, although it may include areas of common knowledge shared with psychology, is demonstrably different, in the aggregate, from the body of theoretical knowledge underlying psychology.

(2) The group must regulate entrance into professional membership by means of standards of knowledge, training and proficiency generally accepted by the profession with which it identifies.

(3) The group's activity must be guided by generally accepted quality standards, ethical principles and requirements for an independent profession.

(4) The group must exhibit the ordinary accoutrements of a profession, which may include, but are not limited to, professional journals, regional and national conferences, specific academic curricula and degrees, continuing education opportunities, regional and national certification and awards for outstanding practice within the profession.

49 Pa.Code § 41.7(b).

■ Neuroscience is the scientific discipline concerned with the development, structure, function, chemistry, pharmacology, clinical assessments and pathology of the nervous system. Stedman's Medical Dictionary 1049 (25th ed.1990). It is an accepted multidisciplinary study of how the brain works: its anatomy, its living processes, its physiology, its chemistry and its structure. *See Ponder v. Texarkana Memorial Hospital, Inc.,* 840 S.W.2d 476 (Tex.App.1992). In an effort to advance the understanding of nervous systems and to promote education in the neurosciences, the Society for Neuroscience was formed. The Society, to which both Dr. Lidsky and

Dr. Schneider belong, offers various levels of membership based upon an individual's educational level and contributions in research to the field of neuroscience. The Society sets forth rules of ethics in conducting research and publishes the Journal of Neuroscience, as well as the Neuroscience Newsletter. Because the practice and study of neuroscience meets each of the criteria enumerated in 49 Pa.Code § 41.7(b), we conclude that neuroscience is a recognized profession and falls within the exception to the necessity for a license as provided in Section 3(3) of the Psychologists Practice Act.

As neuroscientists and members of the Society, Drs. Lidsky and Schneider have focused their careers on brain function and behavior, written numerous articles and conducted research on neuroscience issues and have taught medical school classes on topics, including behavioral neuroscience and clinical neuroscience. Based on those professional credentials, Dr. Lidsky and Dr. Schneider fall within the qualification of neuroscientists, and, as such, fall within the exception to the necessity for a license outlined above. Accordingly, because, as neuroscientists, Drs. Lidsky and Dr. Schneider fall within the exception to the necessity of a license provided for in Section 3(3) of the Psychologists Practice Act, and, therefore, their administration and interpretation of the tests did not violate the Psychologists Practice Act, the trial court erred in precluding their testimony based solely on that determination.

Accordingly, because we have concluded that the trial court erred in precluding Dr. Lidsky's and Dr. Schneider's testimony, the granting of a non-suit was improper and the order of the trial court is reversed and the matter is remanded for trial.

This decision was reached prior to the death of Senior Judge Rodgers.

## ORDER

AND NOW, this *5th* day of *December*, 2001, the order of the Court of Common Pleas of Philadelphia County, No. 2467, dated May 4, 2001, is reversed and the matter is remanded for trial.

Jurisdiction relinquished.