666 A.2d 333

**Stephen P. FLANAGAN, Appellant,**

**v.**

**Alexander LABE, M.D., Samuel M. Wilson, M.D., Erwin Cohen, M.D., Zaslow–Portner–Cohen, A.F.L.–C.I.O. Hospital Association d/b/a John F. Kennedy Memorial Hospital.**

Superior Court of Pennsylvania.

Argued June 29, 1995.

Filed Oct. 19, 1995.

Barbara Axelrod, Philadelphia, for appellant.

Arthur B. Keppel, Philadelphia, for A.F.L.–C.I.O. Hospital, appellee.

Before ROWLEY, President Judge, and HUDOCK and CERCONE, JJ.

CERCONE, Judge.

This is an appeal from an order of court granting summary judgment against appellant Stephen Flanagan and in favor of appellee John F. Kennedy Memorial Hospital. We affirm.

The trial court has provided us with the following concise summary:

On or about December 2, 1991, [appellant] Stephen Flanagan, went to the Emergency Department of the John F.

Kennedy Memorial Hospital for treatment of spontaneous left pneumothorax [collapsed lung]. While at the hospital a chest tube was inserted into Mr. Flanagan's left anterior chest wall. Subsequent to this procedure, [appellant] claims that substandard nursing care led to the development of "progressively worsening subcutaneous emphysema."

Trial court opinion dated February 7, 1995 at 2. Appellant then filed a medical negligence action. Specifically, appellant maintains that the hospital's nursing staff failed to document the patient's complaints of pain and response to medication and failed to monitor his breathing or palpate his chest. This deviation from the standard of reasonable nursing care substantially contributed to an exacerbation of subcutaneous emphysema. To support these allegations, appellant presented only one witness, Audrey Stephan, Ed.D., R.N.[1]

On June 27, 1994, the morning of trial, the lower court granted appellee hospital's motion in limine seeking to preclude Nurse Stephan from providing expert testimony on the issue of causation. The absence of this testimony prevented appellant from stating a *prima facie* case of malpractice. Accordingly, the trial court granted appellee's motion for summary judgment. In the instant timely appeal from that order, appellant maintains that because Nurse Stephan was competent to testify as to causation, summary judgment was improper.

We note initially that summary judgment may be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035, 42 Pa.C.S.A. The judgment may only be granted in cases that are clear and free from doubt. *Szabo v. Bryn Mawr Hospital*, 432 Pa.Super. 409, 412,

1. The certified record discloses that Audrey Stephan has earned a Bachelor of Science degree in nursing, a Master of Science degree in nursing education, and a doctoral degree in education. Moreover, she has taught cardiovascular and respiratory nursing and has garnered substantial experience caring for chest tube patients in the hospital setting.

638 A.2d 1004, 1006 (1994). A reviewing court must examine the record in the light most favorable to the non-moving party, accepting as true all well-pleaded facts and giving that party the benefit of all reasonable inferences drawn from those facts. *Id.* We may overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *McCain v. Pennbank,* 379 Pa.Super. 313, 318, 549 A.2d 1311, 1313 (1988). *Accord Marks v. Tasman,* 527 Pa. 132, 134–35, 589 A.2d 205, 206 (1991).

 To state a *prima facie* cause of action for malpractice, a plaintiff must establish that (1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient, and (4) the damages suffered by the patient were a direct result of that harm. *Mitzelfelt v. Kamrin,* 526 Pa. 54, 62, 584 A.2d 888, 891 (1990). Moreover, we require that an *expert* witness testify "to a reasonable degree of *medical* certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the *proximate cause* of the harm suffered." *Id.* at 62, 584 A.2d at 892 (emphasis added).

 The decision to permit a witness to testify as an expert rests within the discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Montgomery v. South Philadelphia Medical Group, Inc.,* 441 Pa.Super. 146, 151–53, 656 A.2d 1385, 1388 (1995). Pursuant to Pennsylvania's liberal standard, witnesses may testify as experts if they possess knowledge outside the ordinary reach and offer testimony that could assist the trier of fact. *Id.* "To qualify as an expert, a witness need not possess all of the knowledge on a subject; rather, the witness should have a reasonable pretension to specialized knowledge." *Id.* The weight to be assigned to expert testimony lies within the province of the jury. *Id.*

Neither party to this action challenges the competency of Nurse Stephan to provide expert testimony regarding the first

element of a *prima facie* malpractice case, *i.e.*, the applicable standard of care. "If a duly qualified practical nurse is permitted by law to do certain acts, and she has in fact done those acts or is familiar with them, there is no reason why she could not testify as an expert witness as to those acts." *Taylor v. Spencer Hospital*, 222 Pa.Super. 17, 26, 292 A.2d 449, 453 (1972). Similarly, both parties acknowledge Nurse Stephan's competency to identify breaches of that standard allegedly committed by the nursing staff at John F. Kennedy Hospital: "It is my expert nursing opinion that the care rendered to the plaintiff Stephen Flanagan during the period of December 2, 1991 through December 4, 1991 . . . was below the standard of reasonable nursing care which should have been delivered to a patient with his complaints, medical diagnosis, and use of chest tubes." Nevertheless, the parties contest the competency of Nurse Stephan to testify as to the remaining elements of causation and damage.

In *Cohen v. Albert Einstein Medical Center*, 405 Pa.Super. 392, 399, 592 A.2d 720, 723 (1991), *appeal denied*, 529 Pa. 644, 602 A.2d 855 (1992), we noted the professional qualifications and specialized training possessed by a registered nurse and deemed the nurse qualified to testify as to the standard of care necessary in the administration of an intramuscular injection. *Id.* The nurse testified

> to a reasonable degree of certainty, "[i]f proper technique is used, you should not hit the radial nerve." This testimony, although not specific, was sufficient, together with [the patient's] testimony, to require the issue of negligence to be submitted to the jury. From such evidence, the jury could infer that an injection which caused an immediate wrist drop had been negligently given.

*Id.* Nevertheless, to prove that the injury, *i.e.*, the wrist drop, had been *legally caused* by the injection, the complainant was constrained to rely on the expert testimony of several *physicians*. *Id.*

In the instant case, however, Nurse Stephen was the lone proffered expert on the issues of legal causation and diagnosis.

Specifically, if allowed, Nurse Stephan would have provided the following testimony:

In summation, it is my nursing expert opinion, to a reasonable degree of nursing certainty, that all of the nurses ... did not meet the standard of nursing care with respect to their nursing care of Stephen Flanagan and as such were a substantial contributing factor in his *progressively worsening subcutaneous emphysema.*

. . . .

[I]t is Ms. Stephan's opinion, *to a reasonable degree of medical certainty* that, had the JFK nurses promptly assessed and recognized Stephen Flanagan's early signs and symptoms of subcutaneous emphysema, the patient's subcutaneous emphysema could have been managed ... thereby averting both the *exacerbation of the patient's subcutaneous emphysema* and the intensification of care necessitated as a result of that exacerbation.

Reports of Nurse Stephan dated July 26, 1993 and June 20, 1994 (emphasis added). Although we commend Nurse Stephan's professional accomplishments, we are not convinced that a nurse may properly testify "to a reasonable degree of medical certainty" on the issues of legal causation and diagnosis in a medical malpractice action.

Appellant stresses that "[e]xperts in one area of medicine have been deemed qualified to address other areas of specialization where the specialties overlap in practice, or where the specialist had experience in a related medical field." *McDaniel v. Merck, Sharp & Dohme,* 367 Pa.Super. 600, 612, 533 A.2d 436, 442 (1987), *appeal denied,* 520 Pa. 589, 551 A.2d 215 (1988) and 520 Pa. 589, 551 A.2d 216 (1988). The majority of the cases cited by appellant address the ability of one medical doctor to critique the performance of another. *See e.g., Lira v. Albert Einstein Medical Center,* 384 Pa.Super. 503, 510, 559 A.2d 550, 553 (1989), *appeal denied,* 527 Pa. 635, 592 A.2d 1302 (1990) and 527 Pa. 635, 592 A.2d 1302 (1990) (ruling that a licensed physician, board certified in neurology and trained in otolaryngology, possessed sufficient skill, knowledge and expertise such that his opinion would aid the jury in resolving a

medical malpractice action filed against a throat specialist); *McDaniel, supra,* (board certified specialist in both internal medicine and infectious diseases was qualified to express an opinion regarding the cause of decedent's hemolytic anemia and death even though the physician was not also a hematologist); *Kearns v. Clark,* 343 Pa.Super. 30, 493 A.2d 1358 (1985) (urologist qualified to evaluate surgeon's performance in hysterectomy when urologist was familiar with and had assisted in the performance of other hysterectomies). *But see Dambacher by Dambacher v. Mallis,* 336 Pa.Super. 22, 43, 485 A.2d 408, 419 (1984), *appeal denied,* 508 Pa. 643, 500 A.2d 428 (1985) (noting that although a witness's experience and education may embrace the subject in question in a general way, the subject may be so specialized that the witness will not be qualified to testify. "Thus, every doctor has a general knowledge of the human body. But an ophthalmologist, for example, is not qualified to testify concerning the causes and treatment of heart disease"). Appellant has not provided, nor have we been able to uncover any binding precedent authorizing a nurse to express an expert opinion regarding either medical causation or diagnosis.

Although our courts have permitted non-medical practitioners to testify within their specialties, the scope of this testimony has not been expansive. In *Simmons v. Mullen,* 231 Pa.Super. 199, 208–10, 331 A.2d 892, 898 (1974), for example, a clinical psychologist was deemed competent to render expert testimony as to organic brain disturbances. *Id.* Nevertheless, the non-medical practitioner was not qualified to testify as to causation. *Id.* at 212, 331 A.2d at 899–900. *See also Pratt v. Stein,* 298 Pa.Super. 92, 153, 444 A.2d 674, 706 (1982) (a professor of pharmacology, *i.e.,* the study of medications and their origin, nature, properties and effect on living organisms, was qualified to testify regarding the toxic nature of a drug proscribed by a doctor, the existence of alternate medications and the standard of care to be followed in dosage).

Our Supreme Court has recently held that a medical degree is not a prerequisite to the admission of expert testimony as to time of death. *Miller v. Brass Rail Tavern,* 541 Pa. 474, 483,

664 A.2d 525, 529 (1995). "[A] mortician of twenty seven years, duly licensed by this Commonwealth, who has also served in the dual capacity as county coroner for fifteen years, may have specialized knowledge regarding the time of death which would not otherwise be known to a lay individual." *Id.* In *Miller*, the appellant proved by a preponderance of the evidence that the Brass Rail Tavern had served decedent alcohol while decedent was visibly intoxicated. The appellant sought to establish a causal link between the negligence of the tavern in serving decedent and the fatal automobile accident. Accordingly, the appellant needed to prove that the time of death was sufficiently close to the time decedent was negligently served. To that end, the appellant relied on the proposed expert opinion of a lay coroner. *Id.* at 478, 664 A.2d at 527.

As an arm of the prosecution, a coroner is particularly suited to provide such testimony. *See generally Commonwealth v. Anderson*, 253 Pa.Super. 334, 346–47, 385 A.2d 365, 371–72 (1978) (*en banc*) ("[A] coroner in Pennsylvania has powers which in fact make him part of the Commonwealth's criminal investigation team").[2] Specifically, a coroner is authorized by statute to conduct an "investigation ... to determine the cause of any such death and to determine whether or not there is sufficient reason for the coroner to believe that any such death may have resulted from criminal acts or criminal neglect of persons other than the deceased." 16 P.S. § 1237(b). To properly carry out his duties and assess whether the death resulted from the tavern's negligence, the coroner in *Miller* was therefore required to ascertain the time of death.

2. Pursuant to statute,

(a) The coroner having a view of the body shall investigate the facts and circumstances concerning deaths ... for the purpose of determining whether or not an autopsy should be conducted or an inquest thereof should be had, in the following cases:

. . . . .

(2) deaths occurring under suspicious circumstances, including those where alcohol, drugs or other toxic substances may have had a direct bearing on the outcome;

(3) deaths occurring as a result of violence or trauma, whether apparently homicidal, suicidal or accidental. . . .

16 P.S. § 1237(a).

■ ˙To the contrary, the legislature statutorily forbade Nurse Stephan from formulating medical diagnoses.[3] Nevertheless, according to proposed testimony, she attributed the patient's "progressively worsening subcutaneous emphysema" to the hospital staff's deviation from the appropriate standard of care between December 2, 1991 and December 4, 1991. The patient was not diagnosed by a physician with subcutaneous emphysema, however, until December 4, 1991. Accordingly, her opinion is premised on her own unsupported medical diagnosis. Pennsylvania Nursing Law expressly stipulates that

> [t]he "Practice of Professional Nursing" means diagnosing and treating human responses to actual or potential health problems through such services as casefinding, health teaching, health counseling, and provision of care supportive to or restorative of life and well being, and executing medical regimens as prescribed by a licensed physician or dentist. *The foregoing shall not be deemed to include the acts of medical diagnosis or prescription of medical therapeutic or corrective measures . . . .*

63 P.S. § 212(1) (emphasis added). The statute confers no authority to practice medicine. *Id.* § 214. Accordingly, appellant's proffered expert was not authorized to formulate medical diagnoses and was therefore not competent to provide a jury with such formulations.

Based on the foregoing, we find that the Court's recent pronouncement in *Miller, supra,* does not govern our resolution of the instant case. The testimony of a lay coroner regarding time of death is qualitatively different from the testimony of a nurse as to medical diagnosis and causation. *See Commonwealth v. Smith,* 480 Pa. 524, 532, 391 A.2d 1009, 1013 (1978) (report of a lay coroner which did not contain medical opinions, but merely facts observed by the coroner during external and internal examinations could form a basis from which a doctor, in combination with an independent examination, could draw conclusions with a reasonable degree of medical certainty as to cause of death). We conclude,

---

**3.** *See* 63 P.S. § 212 (discussed *infra* ).

therefore, that the lower court properly precluded Audrey Stephan, Ed.D., R.N. from providing expert testimony regarding these specific issues. Absent competent expert testimony, appellant was unable to state a *prima facie* case of medical negligence. Consequently, appellant's evidence of malpractice was insufficient to require submission of the case to a jury and summary judgment was properly granted.

Order affirmed.