Kenneth McCLAIN and Alexandria McClain, minors by and through their parent and natural guardian, Hope THOMAS, Appellants,

v.

Juliet WELKER and Harvey Welker, individually and d/b/a Welker Real Estate, Appellees.

Superior Court of Pennsylvania.

Submitted Feb. 22, 2000.

Filed Oct. 13, 2000.

Richard K. Hohn and MaryEllen T. Conroy, Philadelphia, for appellee.

BEFORE: CAVANAUGH, KELLY, and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Kenneth and Alexandria McClain, both minors, suffer from toxic lead poisoning. Appellants allege that the poisoning was due to the ingestion of lead-based paint found in their rental home. Juliet and Harvey Welker and Welker Real Estate, appellees, owned the rental unit. The trial court granted appellees' motion *in limine* that sought to prohibit appellants' expert from testifying as to issues of causation. After granting the motion, the trial court then granted appellees' motion for non-suit. We reverse and remand for trial.

¶ 2 In 1991, pediatricians diagnosed the minor appellants as suffering from lead poisoning. At trial, appellants sought to introduce the testimony of Dr. Theodore Lidsky to show that the children experi-enced cognitive defects caused by the lead poisoning. Upon objection by the defense, the trial judge ruled that Dr. Lidsky's proposed testimony regarding causation would be inadmissible. In its order denying post-trial relief, the trial judge ruled that since Dr. Lidsky did not possess a medical degree, he was not qualified to testify as to medical causation. Appellants now argue that the trial court erred in ruling that one must have a medical degree in order to testify in matters regarding organic causes and effects.

¶ 3 We recognize that our standard of review is very narrow.

> The admission or exclusion of evidence, including the admission of testimony from an expert witness, is within the sound discretion of the trial court.... [W]e may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be errone-ous, but also harmful or prejudicial to the complaining party.

*Turney Media Fuel, Inc. v. Toll Bros., Inc.*, 725 A.2d 836, 839 (Pa.Super.1999).

¶ 4 In *Miller v. Brass Rail Tavern*, 541 Pa. 474, 664 A.2d 525 (1995), our Supreme Court considered whether a person with-out a medical degree, who acted in the dual role of mortician and county coroner, could give expert testimony as to the time of death. *See Miller*, 664 A.2d at 529. The trial court had concluded that "a lay coroner's testimony may [not] extend ... to medical opinions [ ] which would have to be delivered by an expert medical wit-ness[ ]." *Id.* Before holding that "the re-fusal to qualify [the coroner] as an expert witness based solely upon his lack of for-mal medical training was an abuse of dis-cretion," the Supreme Court noted that

> [i]t is well established in this Common-wealth that the standard for qualifica-tion of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness

has **any** reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trial of fact to determine.... [Finally, it is not] necessary that an expert be a licensed medical practitioner to testify with respect to organic matters.

*Id.* at 528. Hence, our Supreme Court has permitted an otherwise qualified non-medical expert to give a medical opinion so long as the expert witness has sufficient specialized knowledge to aid the jury in its factual quest.

■ ¶ 5 In the case at hand, the trial judge relied upon this Court's decision in *Flanagan v. Labe*, 446 Pa.Super. 107, 666 A.2d 333, 336–37 (1995), *aff'd*, 547 Pa. 254, 690 A.2d 183 (1997), for the proposition that only medical doctors could testify as to causation. In *Flanagan*, the plaintiff brought a medical malpractice claim against a hospital. *See id.* at 334. He alleged that the nursing staff deviated from the acceptable standard of nursing care, which directly caused an exacerbation of subcutaneous emphysema. *See id.* The plaintiff proposed to call a registered nurse with substantial educational and clinical experience to testify as to the standard of care and causation. *See id.* This Court held that "a nurse may [not] ... testify 'to a reasonable degree of medical certainty' on the issues of legal causation and diagnosis in a medical malpractice action." *See id.* at 336. This holding is consistent with that of *Miller*, in that the nurse in *Flanagan* never asserted that she had any pretension to specialized knowledge related to medical causation.

¶ 6 In discussing its rationale, this Court in *Flanagan* noted several cases in which non-medical professionals did provide expert testimony, but were not permitted to testify regarding causation. *See id.* at 336–37 (citing *Simmons v. Mullen*, 231 Pa.Super. 199, 331 A.2d 892, 898–99 (1974); *Pratt v. Stein*, 298 Pa.Super. 92, 444 A.2d

674, 706 (1982)). In *Simmons*, this Court held that a psychologist could not testify as to causation. *See Simmons*, 331 A.2d at 899. In so holding, we noted that the methodology utilized by the psychologist exposed nothing more than the existence of cognitive defects. *See id.* Thus, in that case, the psychologist's report failed to link the underlying accident as the cause of those defects. This Court, however, indicated that if the psychologist had provided an adequate record, then his opinion as to causation might have been admissible. *See id.* ("Perhaps a psychologist is able to ascertain causation, but the record does not support this conclusion.").

¶ 7 In the instant case, like the coroner in *Miller*, Dr. Lidsky "possesses more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience," in his specialized fields of study. *Miller*, 664 A.2d at 528 (citing *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920, 921 (1986)). Dr. Lidsky, a Ph.D. in neuroscience and psychobiology, has focused his career on brain function and behavior, especially brain dysfunction related to toxins, diseases, and other sources. He has taught medical school classes, written numerous articles and conducted research, all of which focused upon brain dysfunction. Presently, as head of the Laboratory of Electrophysiology at the New York State Institute for Basic Research in Developmental Disabilities, Dr. Lidsky conducts basic research and maintains a clinical practice. *See* N.T. Motion *In Limine*, 6/16/99, at 42–43; *see also* Appellants' Brief, at 19. Finally, Dr. Lidsky examines patients referred to him by neurologists and psychologists for testing in order to determine the causes and extent of various cognitive disorders. Dr. Lidsky is eminently qualified in his specialized field of study. Thus, the trial court abused its discretion when it refused to qualify Dr. Lidsky as an expert witness based solely upon his lack of formal medi-

cal training.[1] Accordingly, on remand, Dr. Lidsky should be permitted to render an expert opinion within the guise of Pa.R.E. 702 as to the causation of cognitive disorders. *See Miller*, 664 A.2d at 528–29.

¶ 8 Because we have concluded that the trial court erred in preventing Dr. Lidsky from testifying as to the causation of the minor appellants' cognitive dysfunction, the trial court's entry of an order granting a non-suit becomes suspect. Our standard of review in determining the propriety of the entry of a non-suit is well settled:

> [Entry] is proper only if the factfinder, viewing all the evidence in favor of the plaintiff, could not reasonably conclude that the essential elements of a cause of action have been established. When a nonsuit is entered, the lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement. A compulsory nonsuit can only be granted in cases where it is clear that a cause of action has not been established and the plaintiff must be given the benefit of all favorable evidence along with all reasonable inferences of fact arising from that evidence, resolving any conflict in the evidence in favor of the plaintiff. The fact-finder, however, cannot be permitted to reach a decision on the basis of speculation or conjecture.

*Joyce v. Boulevard Therapy & Rehab. Ctr., P.C.*, 694 A.2d 648, 652–653 (Pa.Super.1997) (citations omitted), *appeal denied*, 559 Pa. 719, 740 A.2d 1148 (1999). Since the underlying action is based upon a negligence theory, appellants must show that appellees owed them a duty, that appellees breached that duty, that a causal relationship existed between the breach and the resulting injury, and that appellants suffered actual harm. *See Campo v. St. Luke's Hosp.*, 755 A.2d 20, 23–24, 2000 WL 669685, at *3 (Pa.Super.2000) (citing *J.E.J. v. Tri–County Big Brothers/Big Sisters*, 692 A.2d 582, 584 (Pa.Super.1997)). Without Dr. Lidsky's testimony, appellants could not establish the causation element of their *prima facie* case. Therefore, had the trial court properly refused to qualify Dr. Lidsky as an expert, then its entry of a non-suit would have been appropriate, at least as regarding the portion of this action seeking damages for the cognitive defects.[2] *See Joyce*, 694 A.2d at 652–53 (stating that non-suit is proper when looking at all of the evidence, plaintiff fails to establish a *prima facie* case). Since we hold that Dr. Lidsky is qualified to give an opinion as to causation, appellants can now present a *prima facie* case. Therefore, the trial court erred in granting the non-suit.

¶ 9 Accordingly, the trial court's order refusing to allow Dr. Lidsky to testify as to the causation of the cognitive defects is reversed, and this case is remanded for a trial consistent with this opinion. Jurisdiction is relinquished.

¶ 10 CAVANAUGH, J., Concurs in the Result.

---

**1.** The trial court's confusion on this issue is understandable, as many jurisdictions have come to differing conclusions. For opinions that collect interjurisdictional decisions, compare *Hutchison v. American Family Mut. Ins. Co.*, 514 N.W.2d 882 (Iowa 1994) with *Martin v. Benson*, 125 N.C.App. 330, 481 S.E.2d 292, 296 (1997).

**2.** Appellants argue that the trial court erred in dismissing their entire case because, even without Dr. Lidsky's testimony, they could present a *prima facie* case regarding the children's pain and suffering resulting from the lead poisoning. *See* Appellants' Brief, at 39. We decline to address this issue as our resolution of appellants' first issue makes this question moot. If we were to address this question, we would find it waived, as appellants have provided no analysis as is required under Pa.R.A.P. 2119(b). *See In re Hall*, 731 A.2d 617, 624 (Pa.Super.1999).