J-S79034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., SUCCESSOR | : | IN THE SUPERIOR COURT OF |
| BY MERGER TO BAC HOME LOANS | : | PENNSYLVANIA |
| SERVICING, LP, F/K/A COUNTRYWIDE | : | |
| HOME LOANS SERVICING, LP, N/K/A | : | |
| CHRISTIANA TRUST, A DIVISION OF | : | |
| WILMINGTON SAVINGS FUND | : | |
| SOCIETY, FSB, NOT IN ITS INDIVIDUAL | : | |
| CAPACITY BUT AS TRUSTEE OF ARLP | : | |
| TRUST 4 | : | |
| | : | |
| v. | : | |
| | : | |
| PETER IABONI AND CELINDA IABONI, | : | |
| H/W, AND PETER IABONI, JR., | : | |
| | : | |
| Appellants | : | No. 647 EDA 2016 |

Appeal from the Order entered January 14, 2016
in the Court of Common Pleas of Pike County,
Civil Division at No(s): 656-2012

BEFORE:  GANTMAN, P.J., MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:              **FILED JANUARY 10, 2017**

Peter Iaboni and Celinda Iaboni, husband and wife, and Peter Iaboni, Jr. (collectively "the Iabonis"), appeal from the Order entering a verdict in favor of Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP, n/k/a Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 4 (collectively "Bank of America"), and declaring that the refinance mortgage on the property in Greene Township applied to both Peter and Celinda Iaboni on the basis of the tenants by the entireties presumption.  We affirm.

The trial court set forth an extensive recitation of the facts, which we adopt for the purpose of this appeal. *See* Trial Court Opinion, 4/8/16, at 1-6 (unnumbered).

On appeal, the Iabonis raise the following questions for our review:

1. Whether the [trial] court was incorrect in entering a verdict in favor of [Bank of America] on the basis of the tenants by the entireties presumption[,] and in finding that the mortgage applied to both Peter Iaboni and Celinda Iaboni[,] where the only evidence of this was the fact that Celinda Iaboni referred several times in her testimony to title as tenants in common, which testimony demonstrated her intention that she hold title not as an entireties co-tenant[,] but as a tenant in common[,] and which clearly should have been sufficient to rebut the presumption[?]

2. Whether the [trial] court was incorrect in finding that Peter Iaboni acted on behalf of himself and Celinda Iaboni when he refinanced the loan on the property where it found that Celinda Iaboni was not removed from the deed and mortgage but[,] rather[,] was present at the refinance and "was aware of the actions taken that day[,]" but neglected to consider that Celinda Iaboni signed the deed the day before the loan refinance closing and, although she was present at the closing, took no part in the closing itself[?]

3. Whether the [trial] court was incorrect in reforming the mortgage to add Celinda Iaboni[,] where there was no mutual mistake in the preparation of the mortgage document[,] but where the mistake was unilateral[?]

Brief for Appellants at 4.

Our standard of review is as follows:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light

- 2 -

most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Stephan v. Waldron Elec. Heating & Cooling LLC***, 100 A.3d 660, 664–65 (Pa. Super. 2014) (citation omitted).

In their first claim, the Iabonis contend that Celinda Iaboni's testimony was sufficient to rebut the tenants by the entireties presumption. Brief for Appellants at 6. The Iabonis argue that Celinda Iaboni stated that she had obtained the property in question as a tenant in common. ***Id***. The Iabonis further point to Celinda Iaboni's testimony, with regard to the 2006 deed accompanying the subject mortgage, that she was present at the closing and merely signed "what she was told to sign." ***Id***.

The trial court set forth the relevant law, addressed the Iabonis' claim and determined it is without merit. ***See*** Trial Court Opinion, 4/8/16, at 9-11 (unnumbered). Here, the Iabonis merely cite to testimony that supports their position and ostensibly ask this Court to reweigh the evidence in their favor, and reassess the credibility determinations made by the trial court. ***See Kornfeld v. Atl. Fin. Fed.***, 856 A.2d 170, 173 (Pa. Super. 2004) (stating that in a non-jury trial, "[i]t is not our role to pass on the credibility of witnesses, as the trial court clearly is in the superior position to do so.").

We decline to reweigh the evidence, and we adopt the sound reasoning of the trial court for the purpose of this appeal. *See* Trial Court Opinion, 4/8/16, at 9-11. Thus, the Iabonis are not entitled to relief on this claim.

In their second claim, the Iabonis contend that the trial court failed to consider the fact that the deed accompanying the subject mortgage was not signed at the closing, but was signed the day before closing. Brief for Appellants at 7. The Iabonis again point out Celinda Iaboni's testimony that she had signed what she was asked to sign, and that no one asked her to sign the mortgage. *Id*. The Iabonis also assert that the mortgage broker testified that Peter Iaboni was the intended borrower. *Id*. The Iabonis thus argue that Celinda Iaboni was not aware of the actions that took place that day. *Id*.

The trial court addressed this claim and determined that it is without merit. *See* Trial Court Opinion, 4/8/16, at 11-12 (unnumbered); *see also* *Stephan*, 100 A.3d at 664 (noting that the trial judge's findings of fact are given the same weight as the verdict of a jury). Thus, we adopt the sound reasoning of the trial court, and affirm on this basis with regard to the Iabonis' second claim. *See* Trial Court Opinion, 4/8/16, at 11-12 (unnumbered).

In their third claim, the Iabonis contend that the trial court incorrectly ordered that the mortgage be reformed because there was no evidence of a mutual mistake. Brief for Appellants at 8. The Iabonis argue that the

- 4 -

mortgage company made the mistake as it failed to include Celinda Iaboni on the mortgage. *Id*.[1]

The trial court addressed the Iabonis' third claim and determined that it is without merit. *See* Trial Court Opinion, 4/8/16, at 15-18 (unnumbered). Because the Iabonis' argument on appeal does not demonstrate that the trial court erred in reforming the mortgage, we adopt the sound reasoning of the trial court as to this claim. *See id*.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/10/2017

---

[1] We note that the Iabonis cite to a single case, and do not include any citations to the evidence of record to support their claim. *See* Pa.R.A.P. 2119(a) (stating that the argument section shall contain "such discussion and citation of authorities as are deemed pertinent"); *see also* Pa.R.A.P. 2119(c) (noting that "[i]f reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth … a reference to the place in the record where the matter referred to appears[.]").

IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY, PENNSYLVANIA
CIVIL

BANK OF AMERICA, N.A., et al., N/K/A:
CHRISTIANA TRUST, a division of :
Wilmington Savings Fund Society, FSB, :
Not in its individual capacity but as :
TRUSTEE OF ARLP TRUST 4, :
　　　　　　　　　　　　　　　　　　　　:
　Plaintiff/Appellee　　　　　　　　 : 　　No. 656-2012 CIVIL
　　　　　　　　　　　　　　　　　　　　:
vs. 　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
PETER IABONI and CELINDA IABONI :
h/w and PETER IABONI, JR. 　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　Defendants/Appellants 　　　　　　 :

## OPINION SUBMITTED PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925

AND NOW, this _8th_ day of April, 2016, after careful review of the record, this Court continues to stand by its decision and respectfully requests the Superior Court to uphold its Order, dated January 14ᵗʰ, 2016, which entered a verdict in favor of Plaintiff. This Court also adds, pursuant to Pennsylvania Rule of Appellate Procedure 1925, the following:

## I.　　FACTUAL AND PROCEDURAL HISTORY

This action is in equity and concerns a claim for reformation of a mortgage dated February 28, 2006. Plaintiff is Christiana Trust (hereinafter "Plaintiff") and is the proper party to bring this action pursuant to an Assignment of Mortgage recorded on May 27, 2014. Defendants are Peter Iaboni and Celinda Iaboni (husband and wife) and Peter Iaboni, Jr. (hereinafter "Defendants").

APPENDIX I

The property at issue (hereinafter the "Aggregate Property") is located in Greene Township, Pike County, Pennsylvania. Defendants Peter and Celinda Iaboni and niece's husband, Daniel Hinton, obtained title to the Aggregate Property from Josephine and Kenneth Weidlich by a deed executed on April 1, 2005. *Joint Stipulation of Fact* ¶ 1 (January 14, 2016). The Aggregate Property was conveyed in fee for the amount of $260,000 to Peter and Celinda Iaboni and Daniel Hinton as co-grantees and as tenants in common. *Id.* This purchase and conveyance was made pursuant to an Agreement of Sale executed by the Weidlichs and Daniel Hinton only. *Joint Stipulation of Fact* ¶ 2, *Trial Exhibit* 16. The Aggregate Property consisted of multiple tax parcels, including a lake, a house, and a wooded area. *Joint Stipulation of Fact* ¶ 3, *Trial Exhibit* 16 ¶ 2.

Defendants and Hinton financed the purchase of the Aggregate Property through a loan dated April 9, 2005 and issued by The New York Mortgage Company in the principal amount of 221,000 (hereinafter the "Hinton/Iaboni Loan"). *Joint Stipulation of Fact* ¶ 5, *Trial Exhibit* 3. The Hinton/Iaboni Loan was secured by a Purchase Money Mortgage jointly executed by Peter and Celinda Iaboni and Hinton in favor of The New York Mortgage Company. *Joint Stipulation of Fact* ¶ 6, *Trial Exhibit* 3. The Purchase Money Mortgage was recorded with the Recorder's Office in Pike County on May 6, 2005 as Instrument No. 20050007738 in Book 2108, Page 83. *Joint Stipulation of Fact* ¶ 7, *Trial Exhibit* 3. The Purchase Money Mortgage included a Legal Description of the tax parcels contained in the Aggregate Property. *Joint Stipulation of Fact* ¶ 8, *Trial Exhibit* 3. This Description matched the Legal Description of the tax parcels contained in the Aggregate Property that was put forth in the Hinton/Iaboni Deed. *Joint Stipulation of Fact* ¶ 9, *Trial Exhibits* 2 and 3.

In 2006, the Iabonis and Hinton decided to remove Hinton as a co-owner of the Aggregate Property. On February 28, 2006, Peter Iaboni applied for a new loan in his own name in order to pay off the Purchase Money Mortgage. *Joint Stipulation of Fact* ¶ 11, *Trial Exhibit* 21. The New York Mortgage Company approved Peter Iaboni for a loan in the amount of $221,250.00 (hereinafter the "Iaboni Refinance"). *Joint Stipulation of Fact* ¶ 12, *Trial Exhibit* 5. The new loan removed Hinton as an obligor. *Joint Stipulation of Fact* ¶ 12, *Trial Exhibits* 5, 19, 20. The closing on the Iaboni Refinance was done by Reliable Abstract Company on or about February 28, 2006. *Joint Stipulation of Fact* ¶ 13, *Trial Exhibit* 20. Peter and Celinda Iaboni were both present at the Refinance Closing. *Joint Stipulation of Fact* ¶ 14, *Trial Exhibit* 52.

At the Refinance Closing, Peter Iaboni, Celinda Iaboni, and Hinton executed a Deed (hereinafter the "Iaboni Deed") which conveyed the Aggregate Property to Peter and Celinda Iaboni. *Joint Stipulation of Fact* ¶ 16, *Trial Exhibit* 4. The Iaboni Deed was between Peter Iaboni, Celinda Iaboni, and Hinton as grantors as tenants in common and Peter Iaboni and Celinda Iaboni as grantees. *Trial Exhibit* 4. The Iaboni Deed identifies Celinda Iaboni as the "wife" of Peter Iaboni. *Joint Stipulation of Fact* ¶ 17, *Trial Exhibit* 4. The Legal Description contained in the Iaboni Deed describes the Aggregate Property and matches the Legal Description contained in the Hinton/Iaboni Deed. *Joint Stipulation of Fact* ¶ 18-19, *Trial Exhibits* 2, 4. The Iaboni Deed was recorded on March 21, 2006 in Book 2164, Page 1794. *Joint Stipulation of Fact* ¶ 21, *Trial Exhibit* 4.

Peter Iaboni executed and delivered a Mortgage (hereinafter the "Refinance Mortgage") dated February 28, 2006 in order to secure his obligation to repay the Iaboni Refinance loan proceeds. *Joint Stipulation of Fact* ¶ 22, *Trial Exhibit* 5. The Legal

Description contained in the Refinance Mortgage describes the Aggregate Property and matches the Legal Description contained in both the Iaboni Deed and the Purchase Money Mortgage. *Joint Stipulation of Fact* ¶ 23, 24, *Trial Exhibits* 3, 4, 5. The Refinance Mortgage was not executed by Celinda Iaboni. *Joint Stipulation of Fact* ¶ 26, *Trial Exhibit* 5.

Subsequently, the Iaboni Refinance loan proceeds were used to pay off the Purchase Money Mortgage. *Joint Stipulation of Fact* ¶ 27, *Trial Exhibit* 20, 22. As a result, the Purchase Money Mortgage was marked as satisfied pursuant to a Satisfaction of Mortgage dated March 22, 2006. *Joint Stipulation of Fact* ¶ 28, *Trial Exhibit* 6. However, Peter Iaboni has not made a payment on the Iaboni Refinance loan since late 2008. *Joint Stipulation of Fact* ¶ 29.

After Hinton was removed as co-owner of the Aggregate Property, the Iabonis executed several conveyances of different parcels of the property. As of the date of the Iaboni Deed, the following parcels of the Aggregate Property remain titled to members of the Iaboni Family.

1. Lake Wynooska and Lots 48, 50, and 52, contained in Parcel I , remain titled to Peter Iaboni, Jr. under a Deed recorded in Book 2315, Page 1772. *Joint Stipulation of Fact* ¶ 35, *Trial Exhibit* 11.

2. The entirety of Parcel II remains titled to Peter and Celinda Iaboni. *Joint Stipulation of Fact* ¶ 36, *Trial Exhibit* 4.

3. The entirety of Parcel III remains titled to Peter and Celinda Iaboni. *Joint Stipulation of Fact* ¶ 37, *Trial Exhibit* 4.

After the Iaboni Refinance loan went into default, Plaintiff initiated this action by filing a Complaint in Equity on March 23, 2012. *Complaint, Bank of America, N.A. n/k/a*

*Christiana Trust v. Peter Iaboni and Celinda Iaboni, h/w and Peter Iaboni, Jr.* No. 656-2012 (March 23, 2012). Plaintiff averred that the inclusion of Celinda Iaboni as a co-grantee on the Hinton/Iaboni Deed but not as a co-mortgagor on the Refinance Mortgage was a mutual mistake by the parties to the transaction. *Complaint* ¶ 20. Therefore, Plaintiff averred that it could not initiate a foreclosure proceeding because the Refinance Mortgage was signed only by Peter Iaboni and thus did not properly attach as a lien against the Aggregate Property. *Complaint* ¶ 17, 19. Because the Iaboni Refinance loan proceeds were used to pay off the Purchase Money Mortgage, Plaintiff avers that Celinda Iaboni benefited as a co-obligor under the Purchase Money Mortgage. *Complaint* ¶ 22, 23. Plaintiff argued that "Defendants should not be relieved of the consequence of the default on the loan merely because of a mistake in the execution" of the Refinance Mortgage. *Complaint* ¶ 42. Defendants filed an Answer and New Matter on June 8, 2012 and specifically denied that any mistake on their part occurred during the transaction. Defendants averred that any mistake was unilateral by Plaintiff. *Answer and New Matter* ¶ 21, *Bank of America, N.A. n/k/a Christiana Trust v. Peter Iaboni and Celinda Iaboni, h/w and Peter Iaboni, Jr.* No. 656-2012 (June 8, 2012). Plaintiff filed a Reply to Defendants' New Matter on June 18, 2012.

After a period of discovery, Plaintiff filed an Amended Complaint on May 29, 2015. Plaintiff argued that the Refinance Mortgage was valid as a lien against the Aggregate Property, despite being executed only by Peter Iaboni, and that it was entitled to a declaratory judgment based on the tenants by the entireties presumption. *Amended Complaint* ¶ 46-47, *Bank of America, N.A. n/k/a Christiana Trust v. Peter Iaboni and Celinda Iaboni, h/w and Peter Iaboni, Jr.* No. 656-2012 (May 29, 2015). Alternatively,

Plaintiff argued that the Refinance Mortgage should be reformed on the grounds of mutual mistake to add Celinda Iaboni as a co-mortgagor. *Amended Complaint* ¶ 55 59. On July 6, 2015, Defendants filed an Answer with New Matter to Plaintiff's Amended Complaint.

A non-jury trial was on January 14, 2016. This Court heard testimony from Peter Iaboni, Crystal Kearse, Erin Steppacher, Celinda Iaboni, Jason Wiggins, and Daniel Hinton. This Court entered a verdict in favor of Plaintiff on the basis of the tenants by the entireties presumption. *Verdict, Bank of America, N.A. n/k/a Christiana Trust v. Peter Iaboni and Celinda Iaboni, h/w and Peter Iaboni, Jr*, No. 656-2012 (January 14, 2016). This Court ordered that the mortgage dated February 28, 2006 (the Refinance Mortgage) applied to both Peter and Celinda Iaboni and that Celinda Iaboni was equally responsible for the full amount of the Iaboni Refinance loan. *Id*. This Court found that Peter Iaboni was acting on behalf of himself and his wife, Celinda Iaboni, when he refinanced the loan on the Aggregate Property subject to the Refinance Mortgage. *Id*. This Court noted in its Verdict that Celinda Iaboni was present at the Refinance Closing and was aware of the actions taken that day. *Id*.

Defendants filed a Motion for Post-Trial Relief on January 26, 2016. On January 28, 2016, this Court denied that Motion for lack of service. Defendants filed a Notice of Appeal to the Superior Court on February 12, 2016. On March 10, 2016, this Court ordered that the Defendants/Appellants file a Concise Statement of Matters Complained of on Appeal within twenty-one (21) days from the date of the Order. Defendants filed a Concise Statement of Matters Complained of on Appeal on March 23, 2016. Defendants raise the following issues on appeal:

1. The trial court's verdict was incorrect in finding for the Plaintiff on the basis of the tenants by the entireties presumption when the record was sufficient to rebut the presumption.

2. The trial court erred in finding that Peter Iaboni acted on behalf of himself and Celinda Iaboni when he financed the Refinance Iaboni loan on the Aggregate Property when the record does not support such a finding.

3. The trial court erred in failing to distinguish between the three parcels of the Aggregate Property on the verdict slip and in finding that the Refinance Mortgage encumbered all three parcels of the Aggregate Property when the record does not support such a finding.

4. The trial court erred in adding Celinda Iaboni to the Refinance Mortgage because it did not establish a record or find as a fact that a mutual mistake occurred during preparation of the mortgage document.

## STANDARD OF REVIEW

In equity matters, the appellate court's review of the trial court's findings "is limited to determining whether the findings of fact are supported by competent evidence, whether an error of law has been committed, and whether there has been a manifest abuse of discretion." *Regions Mortgage, Inc. v. Muthler*, 889 A.2d 39, 41 (Pa. 2005) (quoting *Vernon Twp. Volunteer Fire Dep't, Inc. v. Connor*, 855 A.2d 873, 879 (Pa. 2004)); *Kepple v. Fairman Drilling Co.*, 615 A.2d 1298, 1302 (Pa. 1992) (citation omitted). The appellate court does not supplant its reasoning with that of the trial court but instead determines whether the trial court could have reasonably reached the conclusions that it

reached. 615 A.2d 1298, 1302 (citation omitted). Therefore, an appellate court will not reverse an equitable decree "unless it is unsupported by the evidence or demonstrably capricious." 615 A.2d 1298, 1302 (quotation omitted) (citation omitted). In equity matters, if supported by competent evidence, the trial court's factual findings are binding. *Id.* at 1302. However, the trial court's conclusions of law are not. *Id.* at 1302 (citation omitted).

Similarly, "in cases arising from non-jury trial verdicts," the appellate court "determine[s] whether" "competent evidence" supports the trial court's findings and "whether the trial court committed" any error of law. *Wyatt, Inc. v. Citizens Bank of Pa.*, 976 A.2d 557, 564 (Pa. Super. Ct. 2009) (quotations omitted) (citations omitted). The appellate court gives the same weight and effect to the trial judge's findings of fact that it gives to a jury's findings. *Id.* at 564. The appellate court "consider[s] the evidence in a light most favorable to the verdict winner" and only reverses the trial court's decision if competent evidence in the record does not support the trial court's findings of fact or the trial court premised its findings on an error of law. *Id.* at 564 (quotations omitted) (citation omitted). At trial, the factfinder has the freedom to the determine 1) witness credibility, including when witness's give conflicting testimony; 2) the weight of witness testimony; and 3) how much, if any, of the evidence to believe. *See Gunn v. Grossman*, 748 A.2d 1235, 1240 (Pa. Super. Ct. 2000) (citing *Gaydos v. Gaydos*, 693 A.2d 1368 (Pa. Super. Ct. 1997) *Flanagan v. Labe*, 666 A.2d 333, 335 (Pa. Super. Ct. 1995)); *Farmers Nat'l Bank of Bloomsburg v. Albertson*, 199 A.2d 486, 487 (Pa. Super. Ct. 1964). If issues involve questions of law, the appellate court's scope of review is plenary. *Wyatt*, 976 A.2d at 564. Because the appellate court must "determine if the trial court correctly applied the law to

the facts," non-jury trial conclusions of law do not bind the appellate court. *Id.* at 564 (quotations omitted) (citation omitted).

## II.   DISCUSSION

Defendants present four issues for review upon appeal, and this Court will address each issue individually below.

**A.   This Court's verdict was correct in finding for the Plaintiff because Defendants did not present sufficient evidence to rebut the entireties presumption that Peter Iaboni acted for the joint benefit of himself and his wife, Celinda Iaboni, when he executed the Refinance Mortgage.**

"A tenancy by the entireties is a form of co-ownership of real or personal property by husband and wife." *In re Brannon*, 476 F.3d 170, 173 (3d Cir. 2007). "Where property is placed in the names of both the husband and wife, the creation of a tenancy by the entireties is presumed." *Gilliland v. Gilliland*, 751 A.2d 1169, 1172 (Pa. Super. 2000) citing *Raiken v. Mellon*, 582 A.2d 11, 14 (Pa. Super. 1990). In order to overcome the presumption that an estate by the entireties exists…there must be clear and convincing evidence to the contrary." *In re Holmes' Estate*, 200 A.2d 745, 747 (Pa. 1964).

The "entireties presumption" is well-established under Pennsylvania law. "It is presumed that each tenant by the entirety may, without specific consent, act individually on behalf of both." 476 F.3d 170, 173. The Pennsylvania courts have established, with respect to entireties properties, a "presumption that during the term of a marriage either spouse has the power to act for both, without specific authorization so long as the benefits of such action inure to both." *Kennedy v. Erkman*, 133 A.2d 550, 554 (Pa. 1957). See also *Schweitzer v. Evans*, 63 A.2d 39 (Pa. 1949) and *Madden v. Gostztonyi Savings & Trust Co.* 200 A. 624 (Pa. 1938). However, the non-acting spouse can offer rebuttal evidence that "the spouse was not in fact authorized by the other spouse." 133 A.2d 550, 553 (entireties

presumption applied because no evidence offered that lessor wife was not in accord with termination of lease despite notice of termination only being signed by lessor husband.)

Defendants argue that the tenants by the entireties presumption should not apply and that the Refinance Mortgage should not apply to both Peter and Celinda Iaboni. Defendants argue that the only evidence supporting the entireties presumption was the fact that Celinda Iaboni was identified on the deed as the wife of Peter Iaboni. Defendants argue that Celinda Iaboni's testimony demonstrated her intention to hold title not as a tenant by the entireties but as a tenant in common.

Celinda Iaboni did refer to title as tenants in common several times in her testimony at trial. *See Trial Testimony* p. 119: 11-4, p.126: 13, p. 145: 15-18. However, those references appear to concern the Wiedlich/Hinton/Iaboni Deed, pursuant to which she did indeed hold title with Peter Iaboni and Daniel Hinton as tenants in common. In fact, she testified that the term "tenants in common" on the Iaboni Deed referred to the grantor clause on that Deed. *Trial Testimony* p. 146: 13-16. Significantly, the Iaboni Deed does not use the term "tenants in common" in the grantee clause; instead, the grantees are identified as "Peter and Celinda Iaboni, his wife." *Trial Exhibit 5.*

Furthermore, this Court finds that there is additional evidence that is sufficient to find for Plaintiff on the basis of the entireties presumption. Peter and Celinda Iaboni were husband and wife at the time of the Refinance Closing. *Joint Stipulation of Fact* ¶ 15. Peter and Celinda Iaboni both attended the Refinance Closing. *Id.* ¶ 15, *Trial Transcript* p. 141: 21-24. All parties agree that Celinda Iaboni knew about the Iaboni Loan and the Refinance Mortgage and was not opposed to the Refinance Mortgage. Celinda Iaboni testified that she supported the refinance loan. *Trial Transcript* p. 143: 6-8.

Defendants have not offered clear and convincing evidence that the Iabonis held title as tenants in common rather than as tenants by the entireties. Consequently, Defendants have not rebutted the entireties presumption, and this Court was correct in finding that Peter Iaboni acted for the joint benefit of himself and his wife, Celinda Iaboni, when he executed the Refinance Mortgage.

**B. This Court was correct in finding that Peter Iaboni acted on behalf of himself and Celinda Iaboni when he refinanced the loan on the Aggregate Property.**

In their Concise Statement, Defendants argue that this Court was incorrect in finding that Peter Iaboni acted on behalf of himself and his wife during the Refinance Closing. Defendants argue that this Court did not consider the fact that Celinda Iaboni signed the deed the day before the Refinance Closing and did not take part in the Refinance Closing itself.

The date of Celinda Iaboni's signature on the Iaboni Deed is February 27, 2006, which is one day before the date on the Refinance Mortgage. However, there was testimony at trial which tends to show that Celinda Iaboni did participate, perhaps even more so than her husband, in the Refinance Closing. Peter Iaboni testified that he was not really involved in the process and that he was counting on his wife to make sure everything was done correctly. *Trial Testimony* p. 62: 22-25, p. 63:1. Erin Steppacher testified that it appeared that Celinda Iaboni was more involved in making sure that everything was done right. *Trial Testimony* p. 100: 22-25. Finally, Jason Wiggins testified that Celinda Iaboni was reviewing each of the documents presented before Peter Iaboni signed them during the Refinance Closing. *Trial Testimony* p. 194: 14-19

Even if Celinda Iaboni did sign the Iaboni Deed the day before the Refinance Closing, the record was sufficient to establish that she still participated in the Refinance Closing and was aware of the events of that proceeding. Therefore, this Court did not err in finding that Peter Iaboni acted on behalf of himself and Celinda when he refinanced the loan on the property.

C. **This Court did not err in failing to distinguish between the three parcels in its verdict and in finding that the Refinance Mortgage encumbered all three parcels because the record was established through testimony and documentary evidence and therefore is sufficient to support such a finding.**

In their Concise Statement, Defendants argue that the record shows that only the house parcel tax map number was encumbered by the Refinance Mortgage and that, therefore, this Court's verdict was incorrect in failing to distinguish between parcels I (the lake), II (the house), and III (the wooded area).

At trial, Defendants argued that the Iabonis only ever intended to mortgage the house parcel, which was tax map number 128.04-02-01. *Trial Exhibit* 32. Celinda Iaboni testified that she attended the closing to sign the original mortgage, the Purchase Money Mortgage, on the Aggregate Property. *Trial Testimony* p. 125: 1. Celinda testified that the "closing was done for everything." *Trial Testimony* p. 126: 11. Therefore, the same closing was conducted for parcels of property that she thought they were paying cash for and the parcel that she thought they were mortgaging. Furthermore, Celinda testified that she only looked at the papers that were given to her during the closing. *Trial Testimony* p. 129: 8-9. However, she also testified that she believed that she would have looked at the mortgage to make sure it included only the house parcel. *Trial Testimony* p. 129: 14, p. 130: 7-15. She further testified that Attorney Spall, who was present at the closing, could testify that

only the parcel with the house was being mortgaged; however, Attorney Spall did not testify and was not deposed. *Trial Transcript* p. 132: 15-19. Significantly, although Celinda testified she believed she would have the documents regarding the 2005 loan and mortgage which would support her argument, she did not produce any documents at trial.

Celinda Iaboni also testified that the Refinance Mortgage was done only for the house parcel. *Trial Testimony* p. 120, 19-20, p. 125, 13-14. The Refinance Mortgage listed only the tax parcel map number for the house parcel on the first page of the document. *Trial Exhibit* 5. However, the legal description that was attached to the Refinance Mortgage includes all three parcels. *Trial Exhibit* 5. Celinda testified that she noticed that the legal description included all three parcels. *Trial Testimony* p. 154, 23-25. Furthermore, she testified that she did not object to the fact that all three parcels were included in the legal description. *Trial Testimony* p. 154, 1-4.

Additionally, third-party witnesses provided rebuttal testimony to Defendants' argument. Jason Wiggins, a loan officer, was involved in both the original purchase in 2005 and the Refinance in 2006. In regards to the 2005 transaction, Mr. Wiggins testified that the Iabonis were financing "everything including the lake." *Trial Testimony* p. 189: 15-22. Mr. Wiggins testified that the Iabonis subsequently contacted him in order to refinance. *Trial Testimony* p. 190: 24-25. Mr. Wiggins testified that his understanding of the Iabonis' intention in refinancing was not to "get any portion of the property they had purchased released from the original mortgage." *Trial Testimony* p. 192: 25, p. 194: 1-4. Finally, Mr. Wiggins testified that Celinda Iaboni was reviewing each of the documents presented before Peter Iaboni signed them during the Refinance Closing. *Trial Testimony* p. 194:14-19.

Erin Steppacher also testified about the purpose of the Refinance and the events of the Refinance Closing. Ms. Steppacher testified that the Iabonis were seeking to mortgage all of the parcels that they had purchased in 2005. *Trial Testimony* p. 97:21. She also testified that she did not recall either Peter or Celinda Iaboni requesting that only one or some of the parcels be encumbered by the Refinance Mortgage. *Id.* 22-25. Ms. Steppacher did not recall questions from either Peter or Celinda Iaboni about which parcels would be encumbered by the Refinance Mortgage. *Trial Testimony* p. 101:6-10.

Initially, it must be noted that Daniel Hinton testified that he was not independently interested in the Aggregate Property. *Trial Testimony* p. 203, 11-13. Hinton testified that he became involved with the transaction because he believed that the Iabonis could not secure financing, and he was willing to put the property in his name. *Trial Testimony* p. 203:5-10. Hinton testified that he applied for a loan to finance the property and that the loan was to finance the whole property rather than only certain parcels. *Trial Testimony* p. 204:15. Hinton also testified that he did not recall the Iabonis claiming that they were only mortgaging the house parcel. *Id.* 5-9.

The testimony of Peter Iaboni also rebuts Defendants' argument. When Hinton was removed from the title in 2006, Peter testified that he and his wife kept the entire property that they had purchased in 2005. *Trial Testimony* p. 34:18-20. Peter testified that the legal description in the Refinance Mortgage appeared to describe the three parcels of property purchased in 2005. *Id.* p. 36:3-20.

Finally, the documentary evidence provided rebuts the Defendants' argument. The 2005 Purchase Money Mortgage and the 2006 Refinance Mortgage both contain legal descriptions for three parcels of property. *Trial Exhibits* 3 and 5. The 2006 title

commitment issued to the mortgagee contains a legal description for the same three parcels of property as the Refinance Mortgage. *Trial Exhibit* 24.

This Court's findings of fact were based on competent evidence. The testimony presented and the documentary evidence provided established a record that was sufficient to support the finding that the Refinance Mortgage encumbered all three parcels of the property. Therefore, this Court did not err in failing to distinguish between the three parcels in its verdict.

### D. This Court was correct in reforming the Refinance Mortgage to add Celinda Iaboni and to hold her responsible for the full amount of the loan in this matter as an owner by the entireties.

It is well established under Pennsylvania law that "courts of equity have the power to reform a written instrument where there has been a showing of fraud, accident or mistake." *Evans v. Marks*, 218 A.2d 802, 805 (Pa. 1966). "When a mortgagee fails to properly secure a loan, the mortgagee may seek "the equitable remedy of reformation" by showing bad faith, accident, mutual mistake, or unilateral mistake." *Regions Mortgage, Inc. v. Muthler*, 889 A.2d 39, 42-42 (Pa. 2005). Although the *Muthler* Court held that no evidence presented in the case before it supported a finding of mutual or unilateral mistake, the *Muthler* Court reaffirmed that under certain proven circumstances, a mortgage may be reformed to add a non-signatory party. 889 A.2d 39, 42.

Defendants argue that this Court was incorrect in reforming the Refinance Mortgage to add Celinda Iaboni when it did not find as a fact that there was a mutual mistake in the preparation of the mortgage documents. However, Defendants mischaracterize the nature of this Court's verdict in which the grounds for reformation are based upon evidence of bad faith by the Iabonis.

Ms. Steppacher testified that she never asked Celinda Iaboni to sign the Refinance Mortgage and that Celinda never refused to sign the Mortgage. *Trial Transcript* p. 104:11-14. Ms. Steppacher did testify that it was due to a mistake on her part that Celinda did not sign the Refinance Mortgage. *Trial Transcript* p. 101:25, p. 102:1-4. However, Ms. Steppacher also testified that Celinda was more "on top of making sure the transaction was done right" than Peter Iaboni. *Trial Transcript* p. 100:22-25. Ms. Steppacher emphasized throughout her testimony that Celinda was fully aware of the proceedings and how the transaction was completed.

This Court also heard testimony from Celinda Iaboni that supports a finding of bad faith. She testified that she assisted her husband with the Iaboni Refinance loan application. *Trial Testimony*, p. 143:2. She helped Jason Wiggins gather documentation to proceed with the loan. *Id.* at 5. She testified that she was not the kind of person who would sign a mortgage for real estate without reading it. *Trial Testimony*, p. 147:11-14. She testified that she was not asked to sign the mortgage. *Trial Testimony*, p. 148:3. Significantly, despite having reviewed the relevant documents and having participate in the Refinance Closing, she testified that she was not aware of the fact that she would be asked to sign the mortgage document since she was remaining on the title with her husband. *Trial Testimony*, p. 149:7.

In his deposition of May 1, 2013, Peter Iaboni stated that his wife handles most of the financial matters in their household. *Transcript of Peter Iaboni's Deposition* p. 73:15-18. Furthermore, Peter testified at trial that Celinda was handling the family's finances in 2006. *Trial Transcript* p. 41:22-24. Consequently, Peter provided a handwritten letter to the New York Mortgage Company that read: "I, Peter Iaboni, living rent free with no obligation to any bills." *Trial Exhibit* 37. This letter was dated February 22, 2006 - right

before the Refinance Closing on February 28, 2006. Peter testified that they were going through "very dark years" and that he "kind of wanted for her to control and take everything." *Trial Testimony*, p. 42:12-16. He also testified that Celinda was paying more attention to the loan and purchase documents throughout the refinancing process. *Id.* at 1-11. He testified that he did not do anything with regard to the properties, the purchasing, or the financing without Celinda's knowledge. *Id.* at 12-15.

Furthermore, Celinda executed a "gift letter" to the New York Mortgage Company on February 27, 2006. *Trial Exhibit* 38. This letter provided that Celinda would give or had given a gift of $100,000.00 to her husband in February of 2006. Peter testified and confirmed that she did give him that gift of $100,000. *Trial Testimony* p. 43:9-12. Peter also testified that Celinda gifted him $100,000.00 so that he would have enough assets to obtain the loan because he was applying for it in his name. *Trial Testimony* p. 44:1-4. Significantly, Peter was then asked: "So, your wife, apparently had a hundred thousand dollars, but you wouldn't tell New York Mortgage Company that she was giving it to you?" *Id.* at 5-8. Peter responded: "I wanted to tell – I don't remember." *Id.* at 9. Finally, despite having $100,000.00 to gift to her husband in order for him to secure the loan, Jason Wiggins testified that Peter was the borrower on the loan because he qualified and Celinda did not. *Trial Testimony* p. 192:18-21.

The Iaboni Refinance loan proceeds were applied to pay off the original mortgage (the Purchase Money Mortgage) on the property. *Joint Stipulation of Fact* ¶ 27. Subsequently, the Purchase Money Mortgage was marked as satisfied pursuant to a Satisfaction of Mortgage dated March 22, 2006. *Id.* at ¶ 28. Celinda Iaboni benefited from this transaction because she was a co-obligor under the Purchase Money Mortgage. Celinda

testified that she was not aware of any financial harm or injury that resulted from her husband's execution of the Refinance Mortgage. *Trial Testimony* p. 159:19-22.

The record is sufficient to support this Court's finding that Celinda Iaboni did not sign the Refinance Mortgage because of some bad faith on the part of the Iabonis. Celinda was handling the family finances during the period of refinancing. She was involved in the events leading up to the Refinance Closing, was fully aware of the proceedings, and participated at length in the Closing itself. Finally, Celinda benefited from the transaction because the Purchase Money Mortgage was satisfied with the loan proceeds. Therefore, this Court did not err in reforming the Refinance Mortgage to add Celinda Iaboni's name in order to hold her equally responsible for the full amount of the loan in this matter as an owner by entireties.

## III.   CONCLUSION

After thorough review of the record in this case, this court did not commit any error of law or override or misapply any law. This Court's judgment was not manifestly unreasonable or the result of partiality, prejudice, bias, or ill will. As this decision was a sound application of the law and clearly supported by the facts, circumstances, and evidence in the case, this Court respectfully requests that the Superior Court uphold its Verdict rendered January 14, 2016.

BY THE COURT:

HON. JOSEPH F. KAMEEN, P.J.

cc:   Scott M. Rothman, Esq., *Attorney for Plaintiff*
      Lawrence J. Avallone, Esq., *Attorney for Defendants*

JLM