J-A26022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHAD BATTERMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| SILVIA SANTO | : | |
| | : | |
| Appellee | : | No. 1371 EDA 2022 |

Appeal from the Order Entered April 27, 2022
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  2019-06877

BEFORE:   BOWES, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM PER CURIAM:                   **FILED JANUARY 9, 2023**

Appellant, Chad Batterman ("Father"), appeals from the order entered

in the Montgomery County Court of Common Pleas on April 27, 2022, which

found Father in contempt of the court's prior custody orders and did not find

Mother in contempt of the court's orders.  We affirm.

The trial court set forth the factual and procedural history of this case

as follows:

> On July 16, 2021, after a five-day custody trial spanning the
> course of months, the Honorable Melissa S. Sterling issued
> a detailed and expansive custody order (the "July 16, 2021
> Order"), granting Mother sole legal custody and primary
> physical custody of the minor children, C.B. ([born October
> 2015]) and D.B. ([born October 2017]) (hereinafter the
> "Children"), subject to Father's periods of partial custody.
> This appeal results from an April 27, 2022 Order finding
> Father in contempt and imposing sanctions.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The relevant factual background follows. Judge Sterling's July 16, 2021 Order provides that Mother has primary physical custody of the [C]hildren and Father has partial physical custody. Father's custody is every other weekend (from Friday at 5:00 p.m. until Monday at 8:00 a.m.) and every Tuesday from 8:00 a.m. until Wednesday at 7:00 p.m. The exchanges take place at the Abington Township Police Department.

In the weeks leading up to Wednesday April 20, 2022, Father filed three petitions requesting emergency court intervention for Mother to relinquish custodial days so that Father could have additional days to celebrate Passover (over and above the holiday schedule set forth in the July 16, 2021 Order which includes days for Passover). Father acknowledged that the July 16, 2021 Order would permit Father to have custody of the Children Tuesday evening of that week only (in addition to the following weekend) and he was requesting emergency relief permitting additional days.

The [c]ourt denied each of Father's three petitions—the final such denial was by an April 19, 2022 Order that included the following language: "The parties shall strictly comply with the holiday schedule set forth in Judge Sterling's July 16, 2021 Order."

Mother filed an emergency petition Thursday April 21, 2022 alleging that Father had failed to return the [C]hildren on Wednesday April 20, 2022 as required by the July 16, 2021 Order (and this [c]ourt's April 19, 2022 Order). Father filed a response that same day providing his explanation for why he failed to return the children (essentially providing that there was some confusion at the police station exchange point and that he was otherwise unilaterally using makeup time owed to him). Father subsequently filed an emergency petition requesting that Mother's alleged boyfriend not appear for exchanges (Mother later testified that she does not have a boyfriend and that no one was with her for the Wednesday evening exchange).

Mother filed an amended emergency petition Friday April 22, 2022 averring that Father was still retaining custody of the

children in violation of the July 16, 2021 Order. That is, Father had refused to exchange the Children on Thursday night in addition to Wednesday night.

The [c]ourt issued an April 22, 2022 Order scheduling a hearing and providing the following language: "Pending further order of the [c]ourt, Mother is granted sole physical custody of the parties' two children. Father shall immediately release custody of the Children to Mother if they are in his custody." [(Order, 4/22/22).] The April 22, 2022 Order further authorized law enforcement to take custody of the Children and return them to Mother.

On Wednesday, April 27, 2022, the [c]ourt presided over a hearing which was scheduled on an emergency basis. At the hearing, the [c]ourt heard testimony from Mother and Father and reviewed exhibits submitted by the parties.

Mother testified that in the hours leading up to the 7:00 p.m. exchange time on Wednesday, April 20th, Father sent a series of Our Family Wizard messages confirming that he "will not be at tonight's custody exchange at 7:00 p.m. [and that] [t]he next exchange will take place on Monday, April 25th." (N.T. Hearing, 4/27/22, at 13-15). Father's stated reasons to Mother for unilaterally assuming extra custodial days was based on the Passover holiday (Father wanted additional days for celebrations) and alleged custodial makeup time that Father was choosing to take. (*Id.*) Mother nevertheless went to the Abington Police Station at 7:00 p.m. but Father was not there with the Children. (*Id.*)

Over the next several hours, there was communications between the parties and both parties ultimately went to the police station between 9:30 and 10:30 p.m. However, Father ultimately "denied the exchange," "would not hand over the children" and left the police station. (*Id.* at 18-25). Mother also testified that Father did not return the Children on Thursday, April 21, 2022. (*Id.* at 27-28). Mother did not receive the Children until Monday, April 25, 2022 despite the April 21, 2022 Order directing that Father "immediately release custody of the Children to Mother". (*Id.* at 117).

Father testified that, indeed, he did not return the Children on Wednesday or Thursday of the week in question—despite the [c]ourt's Orders–for "multiple reasons" including that (i) he was protecting the Children from the police presence at the Wednesday, April 20, 2022 exchange point, (ii) Mother's boyfriend had threatened him at the police station exchange point prompting him to leave with the Children, (iii) Mother had previously agreed for Father to have additional days for the 2022 Passover holiday, (iv) the July 16, 2022 Order is somehow unclear with respect to the 2022 Passover schedule and (v) Father was otherwise entitled to makeup time anyway and was merely exercising his rights in that regard. (*Id.* at 48-128).

The [c]ourt found Father's explanations for failing to comply with the July 16, 2021 Order to be calculated and incredible. Essentially, Father provided a laundry list of excuses for why he felt justified in violating court orders and withholding custody of the Children for the evenings of Wednesday, April 21, 2022 and Thursday, April 22, 2022. Accordingly, the [c]ourt determined that Father was in contempt of [the] July 16, 2021 Order and this [c]ourt's April 19, 2022 Order. Of note, Father has been found in contempt of numerous custody orders both in Montgomery County and Philadelphia.

(Trial Court Opinion, 8/8/22, at 1-4) (citation formatting provided; some emphasis omitted). On April 27, 2022, the court issued an order setting forth the following:

1. Mother's Petitions styled *Emergency Petition for Contempt of Custody and Special Relief To Return Children to Mother and Sanction* (Seq. 466) and *Amended Emergency Petition for Contempt of Custody and Special Relief To Return Children to Mother and Sanction* (Seq. 471) are GRANTED to the extent set forth herein.

2. Father is in CONTEMPT of the July 16, 2021 Custody Order of the Honorable Melissa S. Sterling and the April 19, 2022 Order of the Undersigned.

3. Father is hereby sanctioned as follows:

a) Subject to Paragraph 3(b) herein, Father is sentenced to imprisonment for 15 days in the Montgomery County Correctional Facility to begin June 27, 2022—60 days from today's date. [Father] shall report to the Montgomery County Correctional Facility at 9:00 a.m. on June 27, 2022 to begin serving the sentence. Father shall bring a copy of this Court Order with him to the prison. This sentence shall be served in the Montgomery County Correctional Facility itself and not by way of electronic monitoring or house arrest.[1]

b) To avoid the sanction of incarceration set forth in Paragraph 3(a), the [c]ourt provides the following two alternate conditions: Father may either (i) make payment to the Montgomery Child Advocacy Project ("MCAP") in the amount of $1,000 within 60 days of this Order, (*i.e.*, by June 27, 2022),[2] or (ii) complete 60 hours of community service by June 27, 2022. The community service must be unpaid, on behalf of a non-profit entity and designed to benefit the public. Prior to beginning any community service hereunder, Father shall notify Chambers for pre-approval. Father shall ensure beforehand that his community service supervisor is willing to confirm the completed hours in writing and verbally with Chambers.

c) If Father makes payment in full or completes the community service set forth in Paragraph 3(b), the incarceration provided in Paragraph 3(a) shall be voided.[3]

d) Father is placed on probation for a period of six (6) months to date from today.[4]

e) Conditions of Father's probation include the following: (i) Father must strictly comply with Judge Sterling's July 16, 2021 Custody Order and all other Orders entered in connection with this custody matter (*i.e.*, any Order filed in connection with Montgomery County case number 2019-06877), and (ii) Father must refrain from filing any frivolous petitions.

f) If the [c]ourt becomes on notice that Father may have violated this probation, the [c]ourt shall schedule Criminal Contempt proceedings, providing Father with the "the essential procedural safeguards" as contemplated by Pennsylvania case law.[5] Any such Criminal Contempt proceedings may be in addition to Civil Contempt proceedings if Father is alleged to have violated a [c]ourt Order.

g) Father shall relinquish custody time of the children by way of "makeup time" to Mother. The [c]ourt understands that, as a result of the [c]ourt's April 21, 2022 Order granting her temporary sole physical custody, Mother has had custody of the children for a period of time that otherwise would have been with Father. The [c]ourt concludes that this time with Mother constitutes the entirety of the "makeup time" for which she is entitled.[6]

---

[1] The dominant purpose of the sanctions set forth herein, including the sanction of imprisonment, is to prospectively coerce Father into complying with future [c]ourt Orders— which is in the best interest of the children. *See* ***Goodman v. Goodman***, 556 A.2d 1379 (Pa.Super. 1989), *appeal denied*, 523 Pa. 642, 565 A.2d 1167 (1989). Father has demonstrated a settled purpose of assigning his own personal interpretation to Orders that contradict their plain language, and has ignored numerous warnings that future violations may result in sanctions. The [c]ourt hopes that these sanctions will convince Father to comply with existing and future Orders.

[2] Pursuant to 23 Pa.C.S.[A.] § 5323(g), the [c]ourt may fine a defendant up to $500 per civil contempt in connection with a custody order. The [c]ourt finds that Father is in contempt based on his refusal to return the children to Mother on April 20, 2022 and April 21, 2022. The [c]ourt is hereby fining Father $500 for each of these two specific dates that Father was in

- 6 -

contempt. The [c]ourt finds that Father has the resources to pay this fine based on its findings following the March 11, 2022 hearing with respect to one of Father's *In Forma Pauperis* petitions. This $1,000 fine is in addition to the $500 fine previously imposed on Father pursuant to the [u]ndersigned's March 9, 2022 Order finding Father in contempt.

[3] The alternative conditions of a $ 1,000 fine or 60 hours of community service are to be considered purge conditions pursuant to 23 Pa.C.S.[A.] § 5323(g)(2).

[4] This probationary sentence is imposed pursuant to 23 Pa.C.S.[A.] § 5323(g)(1)(iii).

[5] *See **Ingebrethsen v. Ingebrethsen***, 661 A.2d 403 (Pa.Super. 1995).

[6] In filings, and during today's hearing, Father repeatedly referenced custodial "makeup time" that he asserts Mother owes to him and which he has used to justify making unilateral decisions regarding custody transfers. To the contrary, however, the October 21, 2021 Order of the Honorable Jeffrey S. Saltz references makeup time that Father owes Mother. There is nothing in the historic record of this case to confirm that Mother owes Father any makeup time. In an effort to ensure clarity, the [c]ourt hereby provides, following testimony at today's hearing and a review of the Our Family Wizard records introduced into evidence, that Mother does not owe Father any makeup time. Father's future invocation of alleged "makeup time" to deprive Mother of custody shall be considered contemptuous.

4. Mother is found NOT IN CONTEMPT of any custody Order.

5. Father's petition styled *Emergency Motion for Civil Disobedience of the July 16, 2021 Order and Special Relief Prohibitiing [sic] Mother's Boyfriend Beleived [sic] To Be*

- 7 -

*Idendtiffied [sic] As "Ricky" From Being Around the Parties' Children as Well" [sic] As From All Custody Exchanges* (Seq. 469) is DENIED.

6. The provision in the [c]ourt's April 21, 2022 Order granting Mother sole physical custody of the children until further Order of Court is terminated. The July 16, 2021 Custody Order of the Honorable Melissa S. Sterling, as amended, shall again be in full force and effect.

7. The parties have agreed that any significant others shall stay in the car during custody transfers at the police station.

8. All other requests for relief by Father and Mother, in their written petitions and as clarified at the hearing, are DENIED.

9. This Order resolves all outstanding matters.

(Order, 4/27/22, at ¶¶ 2-4) (emphases omitted, citation formatting provided).

On May 5, 2022, Father filed a timely notice of appeal together with a concise statement of errors complained of on appeal. ***See*** Pa.R.A.P. 1925.

Father raises the following issues on appeal.

1. The Judge erred as a matter of law by finding Plaintiff in contempt.

2. The Judge erred as a matter of law by granting Defendant's Emergency Petition filed April 21, 2022 (Seq. #466) and Defendant's Amended Emergency Petition for Contempt of Custody and Special Relief filed on April 22, 2022 (Seq. #471).

3. The Judge erred as a matter of law by imposing mandatory jail time if monetary sanctions were not paid or 60 hours of community service was not completed by June 27, 2022.

4. The Judge erred as a matter of law by not holding a hearing to review the reasonableness of the sanctions and Father's ability to pay monetary fine.

- 8 -

5. The Judge erred as a matter of law by not placing Father on a payment plan to pay any monetary sanctions.

6. The Judge erred as a matter of law by ordering him to be on probation.

7. The Judge erred as a matter of law by fining him more than the allowed amount pursuant to the rules or 23 Pa.C.S. 5323(g).

8. The Judge erred as a matter of law by failing to find Defendant in contempt of the July 16, 2021 Order, April 5, 2022 Order and April 19, 2022 Order.

9. The Judge erred as a matter of law by denying Plaintiff's Emergency Motion filed on April 22, 2022 (Seq. #469).

10. The Judge erred as a matter of law by denying Plaintiff the right to have his witnesses testify at the April 27, 2022 hearing.

11. The Judge erred as a matter of law by denying Plaintiff the right to show the Court Plaintiff's video exhibits as well as to submit his video exhibits into the record at the April 27, 2022 hearing.

12. The Judge erred as a matter of law by modifying/amending/altering and/or clarifying the July 16, 2021 Custody Order without prior notice and where there was no pending Petition to Modify Custody heard at the hearing.

13. The Judge erred as a matter of law by modifying/amending/altering and/or clarifying the July 16, 2021 Custody Order by putting in its April 27, 2022 Order an amendment NOT agreed to by the parties.

14. The Judge erred as a matter of law by providing Mother makeup time with the parties' children.

15. The Judge erred as a matter of law by failing to provide Father make up time with the parties' children.

16. The Judge erred as a matter of law by failing to recuse himself from the case.

17. Appellant reserves the right to file an amended concise statement.

(Father's Brief at 1-3).[1]

Our scope and standard of review are well settled. "When considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion." *Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa.Super. 2009) (quoting *Hopkins v. Byes*, 954 A.2d 654, 655-56 (Pa.Super. 2008)). Additionally, we must consider that:

> Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute. When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge.

*Habjan v. Habjan*, 73 A.3d 630, 637 (Pa.Super. 2013) (quoting *Langendorfer v. Spearman*, 797 A.2d 303, 307 (Pa.Super. 2002)).

The general rule in proceedings for civil contempt is that "the burden of proof rests with the complaining party to demonstrate, by a preponderance of the evidence, that the defendant is in noncompliance with a court order." *Id.* (quoting *Lachat v. Hinchcliffe*, 769 A.2d 481, 488 (Pa.Super. 2001)).

To sustain a finding of civil contempt, the complainant must

_____

[1] We reproduce Father's issues verbatim.

- 10 -

prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Id.* (quoting *Stahl v. Redcay*, 897 A.2d 478, 486 (Pa.Super. 2006), *appeal denied*, 591 Pa. 704, 918 A.2d 747 (2007)).

After finding a party in contempt for failure to comply with a custody order, the party may be punished by one or more of the following:

(i) Imprisonment for a period of not more than six months.

(ii) A fine of not more than $500.

(iii) Probation for a period of not more than six months.

(iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

(v) Counsel fees and costs.

23 Pa.C.S.A. § 5323(g)(1)(i)-(v). "The purpose of civil contempt is to compel performance of lawful orders, and in some instances, to compensate the complainant for the loss sustained. When contempt is civil, a court must impose conditions on the sentence so as to permit the contemnor to purge himself." *Gunther v. Bolus*, 853 A.2d 1014, 1018 (Pa.Super. 2004), *appeal denied*, 578 Pa. 709, 853 A.2d 362 (2004) (citations and internal quotation marks omitted).

Furthermore, "[t]he admission or exclusion of evidence...is within the sound discretion of the trial court." *In re K.C.F.*, 928 A.2d 1046, 1050

(Pa.Super. 2007), *appeal denied*, 594 Pa. 705, 936 A.2d 41 (2007) (quoting **McClain v. Welker**, 761 A.2d 155, 156 (Pa.Super. 2000)). "An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." **A.J.B. v. M.P.B.**, 945 A.2d 744, 749 (Pa.Super. 2008) (quoting **Bulgarelli v. Bulgarelli**, 934 A.2d 107, 111 (Pa.Super. 2007)).

Finally, we review a trial court's decision to deny a motion to recuse for an abuse of discretion. **In re A.D.**, 93 A.3d 888, 892 (Pa.Super. 2014). "We recognize that our trial judges are 'honorable, fair and competent,' and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially." **Id.** (citation omitted). "It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially…." **Vargo v. Schwartz**, 940 A.2d 459, 471 (Pa.Super. 2007) (quoting **In re S.H.**, 879 A.2d 802, 808 (Pa.Super. 2005), *appeal denied*, 586 Pa. 751, 892 A.2d 824 (2005)).

After a thorough review of the certified record, the parties' briefs, and the relevant law, we conclude that the record supports the trial court's determination. **See In re A.D., supra**; **Harcar, supra**; **In re K.C.F., supra**.

Consequently, we affirm the order finding Father in contempt and declining to find Mother in contempt for the reasons stated in the opinion that the Honorable Henry S. Hilles, III, entered on August 8, 2022.

Specifically, Judge Hilles explained that the trial court did not err in finding Father in contempt for failing to comply with the court's orders. The court explained that Father's petitions to modify the custody schedule over the Passover holiday were denied, the final denial by order issued April 19, 2022, which specifically stated that the parties must "strictly comply with the holiday schedule" set forth in the July 16, 2021 custody order. (Order, 4/19/22). The court observed that it did not err when it later found Father in contempt of court after Father ignored the court's clear and unambiguous orders and kept the Children for the evenings of April 20th and 21st. (**See** Trial Court Opinion at 8-10).

Additionally, Judge Hilles explained that the court's sanctions for Father's contemptuous behavior were appropriate. The court noted that Father has been repeatedly warned about his contemptuous actions in disobeying court orders, but his behavior has not changed. It explained that the purpose of these sanctions was to coerce Father into complying with future court orders, which is in the best interest of Children. (**Id.** at 10-12).

Judge Hilles explained that the trial court did not err in not finding Mother in contempt. Specifically, the court noted that the testimony from the hearing did not support a conclusion that Mother was in contempt of any order.

Rather, the evidence supported Mother's position that she was trying to work within and comply with the applicable custody orders. (*Id.* at 12-13).

Concerning Father's claims that the court erred in denying his petition to prohibit Mother's boyfriend from being around Children and at custody exchanges, Judge Hilles explained that Mother credibly testified that she does not have a boyfriend, nor did she ever bring one to custody exchanges. (*Id.* at 13). The court further stated that it did not err by addressing this issue and including the parties' agreed upon language—that significant others shall remain in the car during custody exchanges—in its April 27, 2022 order. Additionally, the court explained that this provision did not modify custody and was agreed to by Father. (*Id.* at 16-17).

With respect to Father's claims concerning the admissibility of witness testimony and audio recordings at the hearing, Judge Hilles explained that the trial court did not abuse its discretion in concluding that the recordings were irrelevant. The court noted that the offered testimony of Father's mother was hearsay and was otherwise not relevant. The court also found that Father's girlfriend's offered testimony—that Father had not received the court's April 22, 2022 order—was not relevant because Father was not being considered for contempt of that order. (*Id.* at 14-16).

Judge Hilles noted that the court did not err when it denied Father's claims that he was entitled to makeup time. Specifically, the court explained that its finding concerning makeup time was issued as part of the contempt

proceeding to prevent Father from continuing to violate the July 16, 2021 custody order and was not a modification of custody. (*Id.* at 17-18).

Finally, Judge Hilles explained that the court did not err when it denied Father's request for recusal. After an independent analysis, the court determined it could and would be fair and impartial to both sides, and it determined that there was no appearance of impropriety or issues involving public confidence in the judicial system. (*Id.* at 18-19). As to the foregoing points, we adopt Judge Hilles' reasoning as our own.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/9/2023

Case# 2019-06877-559 Docketed at Montgomery County Prothonotary on 08/08/2022 4:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF
MONTGOMERY COUNTY, PENNSYLVANIA
FAMILY LAW DIVISION

CHAD BATTERMAN : SUPERIOR COURT DOCKET NO.
Plaintiff/ Appellant : 1371 EDA 2022
:
v. :
:
:
SILVIA SANTO : LOWER COURT DOCKET NO.
Defendant/ Appellee : 2019-CU-06877

OPINION

HILLES, J. August 8, 2022

Plaintiff/Appellant Chad Batterman (hereinafter "Father"), appeals from this Court's April 27, 2022 Order disposing of a petition filed by Father and two interrelated petitions filed by Defendant/Appellee Silvia Santo (hereinafter "Mother"). For the reasons set forth below, the Court's April 27, 2022 Order should be affirmed.

I. FACTS AND PROCEDURAL HISTORY

On July 16, 2021, after a five-day custody trial spanning the course of months, the Honorable Melissa S. Sterling issued a detailed and expansive custody order (the "July 16, 2021 Order"), granting Mother sole legal custody and primary physical custody of the minor children, C.B. (D.O.B.: 10/20/15) and D.B. (D.O.B.: 10/10/17) (hereinafter the "Children"), subject to Father's periods of partial custody. This appeal results from an April 27, 2022 Order finding Father in contempt and imposing sanctions.

The relevant background follows. Judge Sterling's July 16, 2021 Order provides that Mother has primary physical custody of the children and Father has partial physical custody.

Father's custody is every other weekend (from Friday at 5:00 p.m. until Monday at 8:00 a.m.) and **every Tuesday from 8:00 a.m. until Wednesday at 7:00 p.m.** The exchanges take place at the Abington Township Police Department.

In the weeks leading up to Wednesday, April 20, 2022, Father filed three petitions requesting emergency court intervention for Mother to relinquish custodial days so that Father could have additional days to celebrate Passover (over and above the holiday schedule set forth in the July 16, 2021 Order which includes days for Passover). Father acknowledged that the July 16, 2021 Order would permit Father to have custody of the Children Tuesday evening of that week only (in addition to the following weekend) and he was requesting emergency relief permitting additional days.

The Court denied each of Father's three petitions – the final such denial was by an April 19, 2022 Order that included the following language: "The parties shall strictly comply with the holiday schedule set forth in Judge Sterling's July 16, 2021 Order."

Mother filed an emergency petition Thursday, April 21, 2022 alleging that Father had failed to return the children on Wednesday, April 20, 2022 as required by the July 16, 2021 Order (and this Court's April 19, 2022 Order). Father filed a response that same day providing his explanation for why he failed to return the children (essentially providing that there was some confusion at the police station exchange point and that he was otherwise unilaterally using makeup time owed to him). Father subsequently filed an emergency petition requesting that Mother's alleged boyfriend not appear for exchanges (Mother later testified that she does not have a boyfriend and that no one was with her for the Wednesday evening exchange).

2

Case# 2019-06877-559 Docketed at Montgomery County Prothonotary on 08/08/2022 4:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Mother filed an amended emergency petition Friday, April 22, 2022 averring that Father was still retaining custody of the children in violation of the July 16, 2021 Order. That is, Father had refused to exchange the Children on Thursday night in addition to Wednesday night.

The Court issued an April 22, 2022 Order scheduling a hearing and providing the following language: **"Pending further order of the Court, Mother is granted sole physical custody of the parties' two children.** Father shall immediately release custody of the Children to Mother if they are in his custody." (Emphasis in original) The April 22, 2022 Order further authorized law enforcement to take custody of the Children and return them to Mother.

On Wednesday, April 27, 2022, the Court presided over a hearing which was scheduled on an emergency basis. At the hearing, the Court heard testimony from Mother and Father and reviewed exhibits submitted by the parties.

Mother testified that in the hours leading up to the 7:00 p.m. exchange time on Wednesday, April 20th, Father sent a series of Our Family Wizard messages confirming that he "will not be at tonight's custody exchange at 7:00 p.m. [and that] [t]he next exchange will take place on Monday, April 25th." N.T., 4/27/2022, 13-15. Father's stated reasons to Mother for unilaterally assuming extra custodial days was based on the Passover holiday (Father wanted additional days for celebrations) and alleged custodial makeup time that Father was choosing to take. *Id.* Mother nevertheless went to the Abington Police Station at 7:00 p.m. but Father was not there with the Children. *Id.*

Over the next several hours, there was communications between the parties and both parties ultimately went to the police station between 9:30 and 10:00 p.m. However Father ultimately "denied the exchange", "would not hand over the children" and left the police station. *Id* at 18-25. Mother also testified that Father did not return the Children on Thursday, April 21,

3

Case# 2019-06877-559 Docketed at Montgomery County Prothonotary on 08/08/2022 4:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

2022. *Id* at 27-28. Mother did not receive the Children until Monday, April 25, 2022 despite the April 21, 2022 Order directing that Father "immediately release custody of the Children to Mother". *Id* at 117.

Father testified that, indeed, he did not return the Children on Wednesday or Thursday of the week in question – despite the Court's Orders – for "multiple reasons" including that (i) he was protecting the Children from the police presence at the Wednesday, April 20, 2022 exchange point, (ii) Mother's boyfriend had threatened him at the police station exchange point prompting him to leave with the Children, (iii) Mother had previously agreed for Father to have additional days for the 2022 Passover holiday, (iv) the July 16, 2022 Order is somehow unclear with respect to the 2022 Passover schedule and (v) Father was otherwise entitled to makeup time anyway and was merely exercising his rights in that regard. *Id* at 48-128.

The Court found Father's explanations for failing to comply with the July 16, 2021 Order to be calculated and incredible. Essentially. Father provided a laundry list of excuses for why he felt justified in violating court orders and withholding custody of the Children for the evenings of Wednesday, April 21, 2022 and Thursday, April 22, 2022. Accordingly, the Court determined that Father was in contempt of Judge Sterling's July 16, 2021 Order and this Court's April 19, 2022 Order. Of note, Father has been found in contempt of numerous custody orders both in Montgomery County and Philadelphia.

The Court imposed the following sanctions, set forth in Paragraph 3 of the April 27, 2022 Order which is copied below (with footnotes one through seven included):

a) Subject to Paragraph 3(b) herein, Father is sentenced to imprisonment for 15 days in the Montgomery County Correctional Facility to begin June 27, 2022 – 60 days from today's date. The Defendant shall report to the Montgomery County Correctional Facility at 9:00 a.m. on June 27, 2022

to begin serving the sentence. Father shall bring a copy of this Court Order with him to the prison. **This sentence shall be served in the Montgomery County Correctional Facility itself and not by way of electronic monitoring or house arrest.**[1]

b) To avoid the sanction of incarceration set forth in Paragraph 3(a), the Court provides the following two alternate conditions: Father may either (i) make payment to the Montgomery Child Advocacy Project ("MCAP") in the amount of $1,000 within 60 days of this Order. (i.e., by June 27, 2022),[2] or (ii) complete 60 hours of community service by June 27, 2022. The community service must be unpaid, on behalf of a non-profit entity and designed to benefit the public. Prior to beginning any community service hereunder, Father shall notify Chambers for pre-approval. Father shall ensure beforehand that his community service supervisor is willing to confirm the completed hours in writing and verbally with Chambers.

c) If Father makes payment in full or completes the community service set forth in Paragraph 3(b), the incarceration provided in Paragraph 3(a) shall be voided.[3]

d) Father is placed on probation for a period of six (6) months to date from today.[4]

e) Conditions of Father's probation include the following: (i) Father must strictly comply with Judge Sterling's July 16, 2021 Custody Order and all

---

[1] The dominant purpose of the sanctions set forth herein, including the sanction of imprisonment, is to prospectively coerce Father into complying with future Court Orders -- which is in the best interest of the children. *See, Goodman v. Goodman,* 556 A.2d 1379 (Pa. 1989). Father has demonstrated a settled purpose of assigning his own personal interpretation to Orders that contradict their plain language, and has ignored numerous warnings that future violations may result in sanctions. The Court hopes that these sanctions will convince Father to comply with existing and future Orders.

[2] Pursuant to 23 Pa.C.S. §5323(g), the Court may fine a defendant up to $500 per civil contempt in connection with a custody order. The Court finds that Father is in contempt based on his refusal to return the children to Mother on April 20, 2022 and April 21, 2022. The Court is hereby fining Father $500 for each of these two specific dates that Father was in contempt. The Court finds that Father has the resources to pay this fine based on its findings following the March 11, 2022 hearing with respect to one of Father's *In Forma Pauperis* petitions. This $1,000 fine is in addition to the $500 fine previously imposed on Father pursuant to the Undersigned's March 9, 2022 Order finding Father in contempt.

[3] The alternative conditions of a $1,000 fine or 60 hours of community service are to be considered purge conditions pursuant to 23 Pa.C.S. §5323(g)(2).

[4] This probationary sentence is imposed pursuant to 23 Pa.C.S. §5323(g)(1)(iii)

5

Case# 2019-06877-559 Docketed at Montgomery County Prothonotary on 08/08/2022 4:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

other Orders entered in connection with this custody matter (i.e., any Order filed in connection with Montgomery County case number 2019-06877), and (ii) Father must refrain from filing any frivolous petitions.

f) If the Court becomes on notice that Father may have violated this probation, the Court shall schedule Criminal Contempt proceedings, providing Father with "the essential procedural safeguards" as contemplated by Pennsylvania case law.[5] Any such Criminal Contempt proceedings may be in addition to Civil Contempt proceedings if Father is alleged to have violated a Court Order.

g) Father shall relinquish custody time of the children by way of "makeup time" to Mother. The Court understands that, as a result of the Court's April 21, 2022 Order granting her temporary sole physical custody, Mother has had custody of the children for a period of time that otherwise would have been with Father. The Court concludes that this time with Mother constitutes the entirety of the "makeup time" for which she is entitled.[6]

On May 5, 2022, Defendant filed a timely Notice of Appeal to the Superior Court of Pennsylvania of the April 27, 2022 Order along with a Concise Statement of Matters Complained of on Appeal raising the following issues:

1. The Judge erred as a matter of law by finding Plaintiff in contempt.

2. The Judge erred as a matter of law by granting Defendant's Emergency Petition filed April 21, 2022 (Seq. #466) and Defendant's Amended Emergency Petition for Contempt of Custody and Special Relief filed on April 22, 2022 (Seq. #471).

---

[5] *See, Ingebrethsen v. Ingebrethsen*, 661 A.2d 403 (Pa. Super. 1995).

[6] In filings, and during today's hearing, Father repeatedly referenced custodial "makeup time" that he asserts Mother owes to him and which he has used to justify making unilateral decisions regarding custody transfers. To the contrary, however, the October 21, 2021 Order of the Honorable Jeffrey S. Saltz references make up time that *Father owes Mother*. There is nothing in the historic record of this case to confirm that Mother owes Father any makeup time. In an effort to ensure clarity, the Court hereby provides, following testimony at today's hearing and a review of the Our Family Wizard records introduced into evidence, that Mother does not owe Father any makeup time. Father's future invocation of alleged "makeup time" to deprive Mother of custody shall be considered contemptuous.

6

Case# 2019-06877-559 Docketed at Montgomery County Prothonotary on 08/08/2022 4:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-06877-559 Docketed at Montgomery County Prothonotary on 08/08/2022 4:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

3. The Judge erred as a matter of law by imposing mandatory jail time if monetary sanctions were not paid or 60 hours of community service was not completed by June 27, 2022.

4. The Judge erred as a matter of law by not holding a hearing to review the reasonableness of the sanctions and Father's ability to pay monetary fine.

5. The Judge erred as a matter of law by not placing Father on a payment plan to pay any monetary sanctions.

6. The Judge erred as a matter of law by ordering him to be on probation.

7. The Judge erred as a matter of law by fining him more than the allowed amount pursuant to the rule of 23 Pa.C.S. § 5323(g).

8. The Judge erred as a matter of law by failing to find Defendant in contempt of the July 16, 2021 Order, April 5, 2022 Order and April 19, 2022 Order.

9. The Judge erred as a matter of law by denying Plaintiff's Emergency Motion filed on April 22, 2022 (Seq. #469).

10. The Judge erred as a matter of law by denying Plaintiff the right to have his witnesses testify at the April 27, 2022 hearing.

11. The Judge erred as a matter of law by denying Plaintiff the right to show the Court Plaintiff's video exhibit's [*sic*] as well as to submit his video exhibits into the record at the April 27, 2022 hearing.

12. The Judge erred as a matter of law by modifying/amending/altering and/or clarifying the July 16, 2021 Custody Order without prior notice and where there was no pending Petition to Modify Custody heard at the hearing.

13. The Judge erred as a matter of law by modifying/amending/altering and/or clarifying the July 16, 2021 Custody Order by putting in it's [*sic*] April 27, 2022 Order an amendment NOT agreed to by the parties' [*sic*].

14. The Judge erred as a matter of law by providing Mother make up time with the parties' children.

15. The Judge erred as a matter of law by failing to provide Father make up time with the parties' children.

7

16. The Judge erred as a matter of law by failing to recuse himself from the case.

## II. DISCUSSION

The Court's review of Father's issues follows.

**Issues 1 and 2: The Court did not err by finding Father in contempt.**

When reviewing a trial court determination that a party is in contempt for failing to comply with a court order, the Superior Court's scope of review is "narrow" – the Superior Court "will reverse only upon a showing the court abused its discretion. The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." The complaining party must demonstrate by a preponderance of the evidence that the other party has violated a court order. *Harcar v. Harcar*, 982 A.2d 1230 (Pa. Super. 2009).

In the weeks leading up to Wednesday, April 20, 2022, Father filed three petitions requesting emergency court intervention providing that Mother relinquish custodial days so that Father could have additional days to celebrate Passover (over and above the holiday schedule set forth in the July 16, 2021 Order). The Court denied each of Father's three petitions – the final such denial was by an April 19, 2022 Order that included the following language: "The parties shall strictly comply with the holiday schedule set forth in Judge Sterling's July 16, 2021 Order."

Significantly, the July 16, 2021 Order specifically provides for a holiday schedule (including Passover) and, further, specifically provides that Mother has custody of the Children on the Wednesday and Thursday nights in question (April 20th and 21st, respectively). Father repeatedly made the same request for relief of additional days of custody, and this Court denied each request.

8

Father ultimately ignored this Court's clear and unambiguous orders and kept the Children for the evenings of April 20th and 21st. By so doing he violated Judge Sterling's July 16, 2021 Order and this Court's April 19, 2022 Order. Mother filed two petitions requesting that Father be held in contempt.

At the April 27, 2022 contempt hearing, Mother and Father both testified. This Court found Mother's testimony to be credible and Father's testimony to be incredible. Essentially, Father imposed his own reasoning and analysis and simply decided that he was not required to follow a court order.

The five elements essential to a civil contempt adjudication are: (1) a rule to show cause why attachment should issue; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication. *Langendorfer v. Spearman*, 797 A.2d 303, n.7 (Pa. Super. 2002). "Fulfillment of all five factors is not mandated, however." *Wood v. Geisenhemer-Shaulis*, 827 A.2d 1204, 1208 (Pa. Super. 2003). "[T]he essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard." *Schnabel Assoc., Inc. v. Bldg. and Const. Trades Council*, 487 A.2d 1327, 1334 (Pa. Super. 1985). Certainly these procedural requisites are satisfied; Father had notice of the contempt proceedings and fully participated in the hearing.

To support a finding of civil contempt, a trial court must determine "(1) that the contemnor had notice of the specific order or decree which [he or she] is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." *Harcar v. Harcar*, 982 A.2d 1230 (Pa. Super. 2009).

The Court determined that Father, in refusing to return the Children for the evenings of April 20th and 21st, was in civil contempt of the July 16, 2021 Order and this Court's April 19,

9

Case# 2019-06877-559 Docketed at Montgomery County Prothonotary on 08/08/2022 4:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

2022 Order. Father admitted at the hearing that he was aware of both orders and nevertheless refused to comply. The Court concluded that Father acted with "wrongful intent" by doing so and was therefore in contempt of both orders.

The Court did not err in finding Father in contempt.

### Issues 3 through 7: The Court's sanctions for Father's contemptuous behavior were appropriate.

Having found Father in contempt, the Court was tasked with issuing an appropriate sanction. Father's behavior in violating the two orders here marks the continuation of his pattern of disobeying court orders and assigning his own personal interpretation to orders that contradict their plain language. Father has repeatedly been warned, by a number of Montgomery County judges, about contemptuous actions but his behavior has not changed.

Previously, on March 9, 2022, this Court found Father in contempt of a court order and imposed a sanction of 72 hours of incarceration at the Montgomery County Correctional Facility to begin March 24, 2022 (15 days from the date of the March 9, 2022 Order). The Court imposed a purge condition (as contemplated by 23 Pa.C.S. §5323(g)(2)) of a $500 fine (the maximum fine for a single incident of contempt pursuant to 23 Pa.C.S. §5323(g)) payable to the Montgomery Child Advocacy Project ("MCAP"). The Court ultimately permitted Father to make the $500 payment in four monthly installments of $125. Father exercised the option to comply with this purge condition.

The dominant purpose of these sanctions was to prospectively coerce Father into complying with future Court Orders – which is in the best interest of the children. *See, Goodman v. Goodman*, 556 A.2d 1379 (Pa. 1989). The sanctions were reasonable, measured and in

10

accordance with 23 Pa. C.S. §5323(g). Unfortunately, as a matter of fact, the sanctions failed to coerce Father to comply with future court orders.

Instantly, again in an effort to coerce Father to comply with future court orders, this Court imposed additional sanctions on Father. Specifically, the Court imposed a sanction of 15 days in the Montgomery County Correctional Facility to begin June 27, 2022 (60 days from the date of the order) with alternative purge conditions of (i) a $1,000 payment to MCAP or (ii) 60 hours of community service. Father ultimately decided to complete the purge condition of community service and avoided incarceration.

The Court also placed Father on six months of probation pursuant to 23 Pa. C.S. §5323(g)(1)(iii) with conditions requiring Father to comply with custody orders and refrain from filing frivolous petitions.

Section 5323(g) is entitled "Contempt for noncompliance with any custody order" and reads as follows:

> (1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> (i) Imprisonment for a period of not more than six months.
>
> (ii) A fine of not more than $500.
>
> (iii) Probation for a period of not more than six months.
>
> (iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).
>
> (v) Counsel fees and costs.
>
> (2) An order committing an individual to jail under this section shall specify the condition which, when fulfilled, will result in the release of that individual.

11

Case# 2019-06877-559 Docketed at Montgomery County Prothonotary on 08/08/2022 4:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

The Court carefully structured the sanction to comply with Section 5323. The Court imposed a sanction of imprisonment with a choice of purge conditions. The Court imposed a fine of $500 for each incident of contempt (Father withheld the Children for two nights). And the Court imposed probation for a period of six months. Each of these sanctions was specifically authorized by Section 5323 and was wholly appropriate.

Father has complained that the Court did not hold an additional hearing to determine Father's ability to pay or otherwise offer him a payment schedule longer than the 60 days. This claims lacks merit. There is no requirement under the law that the Court offer a convenient payment schedule for a party in contempt. It is noteworthy, however, that the Court *did* offer Father an alternative to paying a fine: performing 60 hours of community service (which Father ultimately decided to do). The Court did not commit error in fashioning the instant sanction.

**Issue No. 8: The Judge did not err in failing to find Mother in contempt of the July 16, 2021 Order, April 5, 2022 Order and April 19, 2022 Order.**

Father contends that Mother was in contempt of this Court's Orders of July 16, 2021, April 5, 2022 and April 19, 2022. Father is mistaken. The Court heard testimony from Mother and Father with respect to compliance with the foregoing orders. Based on this testimony, the Court concluded that Father was in contempt of the July 16, 2021 and April 19, 2022 Orders. The testimony did not support a conclusion that Mother was in contempt of any order.

The reality is that the testimony confirmed that Mother was trying to work within, and comply with, the applicable custody orders in this case. Father, on the other hand, filed multiple "emergency" petitions ranting at great length about his perceived unfairness of the July 16, 2021 Order and this Court's more-recent orders, and then followed through on his written threat (in his

12

filings) to engage in "self help" to retain custody of the Children in violation of the July 16, 2021 and April 19, 2022 Orders.

The Court did not err in finding that Father, alone, had committed contemptuous behavior.

**Issue No. 9:    The Court appropriately denied Father's April 22, 2022 Emergency Motion.**

On April 22, 2022, Father filed a motion styled *Emergency Motion For Civil Disobedience of the July 16, 2021 Order And Special Relief Prohibiiing* [sic] *Mother's Boyfriend Beleived* [sic] *To Be Identiffied* [sic] *As "Ricky" From Being Around The Parties' Children As Well"* [sic] *As From All Custody Exchanges.*

On April 21, 2022, this Court scheduled an emergency hearing for April 27, 2022 with respect to Mother's contempt petitions. The Court heard testimony relevant to Father's April 22, 2022 petition as well.

Mother testified that she does "not have a boyfriend" and does not "not have a boyfriend named Ricky." She testified that she has "no significant person in my life and in the children's life at the moment." N.T., 4/27/2022, 156. Mother testified that "[t]here was no one at the custody exchange other than myself and the police officer the entire time" on the night at issue (Wednesday, April 21, 2022). N.T., 4/27/2022, 156-157.

The Court found Mother to be credible in this regard and found Father's version of events to be self-serving and incredible. Regardless, the Court addressed the issue by including a provision in the April 27, 2022 Order that "[t]he parties have agreed that any significant others shall stay in the car during custody transfers at the police station." Both parties agreed to this language. N.T., 4/27/2022, 153-154.

13

The Court did not err in handling Father's April 22, 2022 petition in this fashion.

**Issues No. 10 and 11: The Court did not err in denying Father's request to call two witnesses and play two audio recordings at the April 27, 2022 hearing.**

During the April 27, 2022 hearing, Father sought to call two additional witnesses to offer testimony. The first was Father's mother. When asked for an offer of proof, Father said that his mother would "testify to – I guess the religious holiday part" and comments that "our daughter explained to my mother about being scared, that her boyfriend would hurt me, and what she heard her boyfriend – she heard – my mother heard her boyfriend say because I was on the phone with my mother" and that "our daughter is scared and has trouble falling asleep." N.T., 4/27/2022, 129-130. The Court did not permit Father to offer his mother for this purpose, ruling that much of the proffered testimony was hearsay and was otherwise not relevant.

Father also sought to call his "girlfriend" to corroborate Father's contention that he did not have his phone over the weekend of April 23rd (following Wednesday April 20th and Thursday April 21st, the two days that Father did not return the Children to Mother). Father wanted to elicit this testimony to support his position that he did not see this Court's April 22, 2022 Order – directing for the immediate return of the Children to Mother – until Monday, April 25, 2022.

This Court ruled that this testimony was not relevant because Father was not being considered for contempt of the April 22, 2022 Order – only for the July 16, 2021 and the April 19, 2022 Orders.

Father also sought to play two audio recordings for the court. The first was an alleged recording by Father, on Wednesday April 20, 2022, of "Mother saying that there's something mentally wrong with me to the police officer in front of our children." The second was an alleged

14

recording by Father of the parties' daughter making some comments in the car at the police station on April 20, 2022 prior to Father driving off without exchanging the Children. N.T., 4/27/2022, 150.

The Court ruled that these audio recordings were not relevant. The Court heard from both parties with respect to what was clearly a stressful series of encounters at the Abington police station on April 20, 2022. The issue was not whether the parties' daughter was upset or whether Mother did or did not opine to the police officer that Father has mental issues. The issue was whether Father was in contempt by withholding the Children on Wednesday April 20th and Thursday April 21st in violation of clear and unambiguous court orders.

The Court presided over a full hearing on the issue and heard relevant testimony from both parties. The Court concluded that Father refused to exchange the Children because he wanted to spend more time with them celebrating Passover (as he had requested in his serial emergency petitions). The Court found his varying explanations – including that he was somehow afraid of Mother's alleged boyfriend in the presence of a police officer – to be incredible. The additional testimony and audio recordings offered by Father were not relevant to the issues before the Court.

Case law is clear that "[t]he admission or exclusion of evidence ... is within the sound discretion of the trial court." *In re K.C.F.*, 928 A.2d 1046, 1050 (Pa. Super. 2007). An abuse of discretion "is not merely an error of judgment". Rather, a court abuses its discretion in this regard where, "in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." *A.J.B. v. M.P.B.*, 945 A.2d 744, 749 (Pa. Super. 2008). Evidence is relevant if it has any tendency to make a fact more or less

Case# 2019-06877-559 Docketed at Montgomery County Prothonotary on 08/08/2022 4:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

probable than it would be without the evidence, and the fact is of consequence in determining the action. Pa.R.E. 401.

The Court's decision to exclude the proposed testimony of Father's mother and girlfriend along with two audio recordings made by Father was based on relevance grounds and was proper. The Court did not abuse its discretion in this regard.

**Issue No. 12 and 13: The Judge did not err by clarifying the July 16, 2021 Custody Order.**

Father asserts that the Court erred by "modifying/amending/altering and/or clarifying the July 16, 2021 Custody Order". Father is mistaken.

Pennsylvania case law is clear that a trial court may not modify custody if a petition to modify is not at issue. *See, P.H.D. v. R.R.D.,* 56 A.3d. 702 (Pa. Super. 2012). However the Court's April 27, 2022 Order had no effect on the parties' custodial rights or schedule. Rather, the Order was issued in connection with a contempt proceeding and was designed to facilitate more peaceful custodial exchanges which is in the Children's best interest. *See, e.g., N.D.J. v. D.E.J.,* 237 A.3d 463 (Pa. Super. 2020) (unpublished opinion) (at a contempt proceeding where "custody was not at issue", the trial court's contempt order – which clarified a portion of the custody order without affecting either party's custodial rights – was appropriate).[7]

In the instant matter, Father testified that Mother's alleged boyfriend "Ricky" was aggressive during the parties' encounter on Wednesday, April 20, 2022. Mother testified that she does not have a boyfriend named Ricky (nor any boyfriend at all) and that no one was present with her at the exchange point other than an Abington police officer. N.T., 4/27/2022, 148-154.

---

[7] This unpublished Superior Court case is cited for its persuasive value pursuant to Pennsylvania Rule of Appellate Procedure 126(b).

16

Although the Court found Mother to be credible on this point – and not Father – the Court asked if the parties would agree to a provision limiting the involvement of significant others during exchanges. The parties agreed. N.T., 4/27/2022, 153-154. Accordingly, the Court included a provision in the April 27, 2022 Order that "[t]he parties have agreed that any significant others shall stay in the car during custody transfers at the police station."

This provision did not "modify custody" but, rather, provided a clarification as contemplated by *P.H.D. v. R.R.D.,* 56 A.3d. 702 (Pa. Super. 2012). The provision was designed to reduce the stress on the Children during custodial exchanges and, significantly, *was agreed to by Father.* This claim lacks any merit.

**Issue No. 14 and 15: The Court did not err in ruling that neither party was entitled to makeup time.**

During the April 27, 2022 hearing, the Court heard testimony and argument from both parties with respect to alleged makeup time. This has been a recurring theme in this custody dispute – Father continues to claim that Mother owes him makeup time and threatens to unilaterally use this alleged makeup time when he wants additional time with the Children. Indeed, Father used makeup time as one of his bases for ignoring the clear language of the July 16, 2021 and April 19, 2022 Orders. N.T., 4/27/2022, 118-121.

To the extent anyone is entitled to makeup time, however, the October 21, 2021 Order of the Honorable Jeffrey S. Saltz referenced makeup time that *Father owes Mother.* There is nothing in the record of this case – or in the evidence produced during the April 27, 2022 hearing – to suggest that Father is entitled to makeup time. This Court has concluded that Father's

17

repeated threats to exercise non-existent makeup time is unfounded, disingenuous and not in the best interest of the Children.

The Court, in a footnote within the April 27, 2022 Order, noted that "In an effort to ensure clarity, the Court hereby provides, following testimony at today's hearing and a review of the Our Family Wizard records introduced into evidence, that <u>Mother does not owe Father any makeup time.</u> Father's future invocation of alleged "makeup time" to deprive Mother of custody shall be considered contemptuous." Like with the agreement involving "significant others" at exchanges, this clarifying provision was issued in a contempt proceeding not to affect custodial rights or scheduling but to prevent Father from *continuing to willfully violate* the July 16, 2021 Order. This provision was not a modification of a custody order in any way.

The Court's conclusions in this regard were appropriate and the Court did not commit error in concluding, and noting in the order, that neither party owes the other any makeup time.

### Issue 16: The Court properly denied Father's request for recusal

Near the beginning of the hearing, Father requested that the Court recuse itself from the case. N.T., 4/27/2022, 7-11. The Court denied the request.

The Superior Court's standard of review with respect to a trial court's denial of a motion to recuse is "exceptionally deferential." *In re A.D.*, 93 A.3d 888, 892 (Pa. Super. 2014). A motion for recusal requires the court to make a two-pronged analysis. *Commonwealth v. Druce*, 848 A.2d 104 (Pa. 2004). First, the court must make an "independent, self-analysis" of its ability to maintain impartiality. *Id* at 588-589. Second, the court must decide if its involvement in the case would create an appearance of impropriety or would undermine public confidence in the judicial system. *Id.* Trial judges are presumed to be "honorable, fair and competent," and have the ability to decide if they can rule impartially and without prejudice with regard to a motion for

18

recusal. *Id.* The burden is on the petitioner to present evidence of bias, prejudice or unfairness, which would raise a substantial doubt as to whether the jurist possesses the ability to preside impartially. *Arnold v. Arnold,* 847 A.2d 674, 680 (Pa. Super. 2004). Prior adverse rulings alone will not establish bias sufficient for recusal, particularly when the prior rulings are legally appropriate. *Id* at 681.

This Court denied Father's oral motion because, based on (i) an "independent, self-analysis" it determined it could and would be fair and impartial to both sides and (ii) a determination that there were no issues involving any appearance of impropriety or public confidence in the judicial system. The Court recognizes Father's frustration with it – and many judges in the Montgomery County Court of Common Pleas – but generalized frustration with the Court is certainly no basis for recusal. This Court has been fair and impartial to both sides in presiding over various disputes in this case. The Court properly denied Father's oral request in this regard.

## III.   CONCLUSION

For above reasons, the court respectfully requests that Defendant's May 5, 2022 appeal be dismissed and this Court's April 27, 2022 order be affirmed by the Superior Court of Pennsylvania.

BY THE COURT:

HENRY S. HILLES, III, .J.

19

Copies mailed by the Prothonotary to the following:
Chad Batterman, Self Represented
Silvia Santo, Self Represented

Copies mailed on __08/08/2022__ to the following:
Court Administration – Family (interoffice mail)

Judicial Assistant

Case# 2019-06877-559 Docketed at Montgomery County Prothonotary on 08/08/2022 4:10 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.